**In re Eli Kenneth MELLOR and Lisa Mellor, Debtors.**

**Eli Kenneth MELLOR, Lisa Mellor, and John S. Kroh, Trustee, Appellants,**

**v.**

**Raymond G. PISTOLE and Raymond R. Bragg, Appellees.**

BAP No. CC–81–1133–GVH.
Bankruptcy No. SB 80–01921DN.
Adv. No. SB 81–0287–DN.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Jan. 21, 1982.
Decided July 22, 1983.

**152**

Jeffrey C. Krause, Stutman, Treister & Glatt, Los Angeles, Cal., for appellants.

No appearance for appellees.

Before GEORGE, VOLINN, and HUGHES, Bankruptcy Judges.

LLOYD D. GEORGE, Bankruptcy Judge:

An appeal has been taken from a judgment of the trial court which annulled the automatic stay in this case and validated a post-petition summary judgment of a state court dealing with real property belonging to the debtors' estate. We AFFIRM.

## I. BACKGROUND

The facts underlying this appeal are not in question. In June 1977, one of the appellees, RAYMOND G. PISTOLE, purchased certain real property located in Upland, California. Some two months later, Mr. Pistole entered into a land sales contract with one of the debtors, LISA MELLOR, then named Lisa Williams. This agreement required Mrs. Mellor to make a $1,000 down payment, to pay an additional $5,500 to Mr. Pistole in installments, and to assume a deed of trust held by Weyerhaeuser Mortgage Corporation ("Weyerhaeuser") in the principal amount of approximately $68,-450.00.

After making the initial down payment, Mrs. Mellor failed to make any additional payments to Mr. Pistole. However, Mrs.

Mellor and—after their marriage—ELI MELLOR did make necessary monthly payments to Weyerhaeuser through February 1980.

On April 11, 1980, a second deed of trust was recorded against the subject real property by AKOP, Inc, Eli Mellor's former partner, to secure a total debt of $123,-278.00. Subsequently, some $9,623.25 in additional judgment liens were filed against this property.

Facing actions by both Weyerhaeuser and the appellees to foreclose upon the Upland property, the debtors filed a petition under Chapter 13 of the Bankruptcy Code on September 22, 1980. (This case was later converted to a joint Chapter 11 case and a trustee has been appointed in that case.) Shortly following the filing of the debtors' Chapter 13 petition, on October 27, 1980, Weyerhaeuser obtained relief from the debtors' automatic stay by default. Nonetheless, foreclosure by Weyerhaeuser has since been prevented by the appellees' prompt action in curing the default under this trust deed.

Notwithstanding the automatic stay which came into effect with the filing of the debtors' petition under Chapter 13, the appellees continued with their state court action against the Upland real property, obtaining a summary judgment in their favor from the Superior Court of the State of California, in and for the County of San Bernardino, on April 3, 1981. During the pendency of these state court proceedings, however, neither the Chapter 13 trustee nor the trustee appointed in the Chapter 11 case was joined as a necessary party defendant. The state court's summary judgment, entered over the jurisdictional objections of the debtors, ordered that 1) the debtors have "no estate, right, title, lien or interest whatever on and to said property or any part thereof," 2) the land sales contract between Mr. Pistole and Mrs. Mellor be forfeited and declared void, and 3) the subject real property be restored to the possession of the other appellee herein, RAYMOND R. BRAGG.

After obtaining the summary judgment of the California Superior Court, the appellees then, somewhat belatedly, sought to have the debtors' automatic stay lifted or annulled, to permit them to obtain actual possession of the Upland property. At the trial held on this complaint, the debtors, with the assistance of their trustee, attacked the validity of the state court judgment and raised the issue of equity as a defense to the lifting of the automatic stay. They based this latter claim upon the potential voidability of the AKOP, Inc. trust deed, due to its alleged preferential nature.

Without the AKOP, Inc. deed of trust, the total amount secured against the debtors' Upland residence was $76,523.35, some $28,476.65 less than the $105,000.00 value placed by the trial court on the debtors' real property. If the debtors were to waive their homestead—which they have expressed a willingness to do—they maintain that this would represent an adequate equity cushion to preclude a lifting of the automatic stay.

Moreover, the debtors assert that, even if the AKOP, Inc. trust deed were not voidable, the appellees should not be permitted to rely upon junior encumbrancers' claims in alleging a lack of debtor equity in this property. These encumbrancers, it is argued, can only complain if *they* are without an "equity" cushion to protect the amount of the debt owing them.

Finally, the debtors allege that their residence is a necessary asset in carrying out their Chapter 11 plan of arrangement. Thus, they claim that the trial court should not have annulled the automatic stay, even if there were no equity to protect secured creditors.

Following this trial, the lower court entered a judgment, attached to its findings of fact and conclusions of law, which annulled the debtors' automatic stay back to December 8, 1980, and validated the California Superior Court judgment. The debtors and the trustee have appealed both aspects of the trial court's decision.

## II. ANALYSIS OF THE FACTS AND THE LAW

■ Examining, first, the effect of the trial court's approval of the state court judgment, we note that 11 U.S.C. § 362(d) permits a bankruptcy court to "annul" the automatic stay. Therefore, it was unquestionably within the power of the trial court, in appropriate instances, to validate, after the fact, actions against the debtor and/or his property taken in violation of the automatic stay.

The debtors and the trustee, however, have argued more than a mere abuse of the automatic stay. They maintain that the California Superior Court was without jurisdiction to deal with the property of their estate and that the *in rem* judgment of this court was, therefore, void *ab initio*. Hence, they contend that it was improper for the bankruptcy court to validate this determination by a simple annulment of the automatic stay.

We do not find this argument persuasive. In this regard, the position taken by the debtors and the trustee appears to be as follows: First, they would observe that there is no question that the debtors held an interest in the Upland real property at the time they filed their Chapter 13 petition. They would further note that section 1471(e) of title 28 of the United States Code provides that "[t]he bankruptcy court in which a case under title 11 is commenced shall have *exclusive* jurisdiction of all of the property, whereever [sic] located, of the debtor, as of the commencement of such case." (Emphasis supplied.) Although some controversy has arisen as to the extent to which other bankruptcy courts may entertain jurisdiction over a debtor's property, *see, e.g., In re Coleman American Companies, Inc.,* 8 B.R. 384 (D.Kan.Bkrtcy. 1981), *In re Coleman American Companies, Inc.,* 6 B.R. 251, 6 B.R. 915 (D.Colo.Bkrtcy. 1980), it is clear that this statute precludes state courts from exercising jurisdiction over property of a debtor's estate. Therefore, post-petition state court judgments affecting estate property have generally been deemed to be void and of no effect. *See*

*Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Meyer v. Rowen,* 181 F.2d 715 (10th Cir.1950); *In re Murray,* 5 B.R. 732, 6 B.C.D. 921 (D.Md.Bkrtcy.1980). Hence, the debtors and the trustee argue that the trial court erred in attempting to breathe life into the obviously void judgment of the California Superior Court.

■■■ Overlooked in such an analysis, however, are 1) the transitory nature of the "exclusive" jurisdiction of the bankruptcy court over the debtors' property and 2) the effect of relief from the automatic stay in terminating this exclusivity of authority. Although a non-bankruptcy court may not, by its own power, choose to exercise *in rem* jurisdiction over estate property, under 11 U.S.C. § 1471(e), nothing prevents a bankruptcy court from surrendering its exclusivity of jurisdiction in appropriate circumstances. As a creature of statute, a bankruptcy court's exclusive jurisdiction over estate property may be modified or destroyed by the terms of other applicable federal statutes—in this case by the relief provisions found in 11 U.S.C. § 362(d)–(g). Once the automatic stay has been terminated, with respect to an action against estate property, there is no question that the party requesting that termination may subsequently seek relief against the subject property in a non-bankruptcy court.

In the same vein, it would appear that Congress has permitted bankruptcy courts to surrender their exclusive jurisdiction over estate property by an annulment of the automatic stay. Although there is virtually no legislative history to explain the intended interaction of the annulment concept of 11 U.S.C. § 362(d) with the exclusive jurisdiction language of 28 U.S.C. § 1471(e), the Advisory Committee's Note accompanying Fed.R.Bankr.P. 601(c)—a predecessor of section 362(d)—explains the role of annulment in the following terms:

> "Whether the enforcement of a lien against property in the bankruptcy court's custody by an act or proceeding after bankruptcy without permission of the bankruptcy court is void has been the subject of conflicting views by the courts and commentators. See 1 Collier ¶ 2.62[1] & [2] (1968). This rule consists with the view that such an act *or proceeding* is void, but subdivision (c) recognizes that in appropriate cases the court may annul the stay so as to validate action taken during the pendency of the stay."

(Emphasis supplied.)

This Note does not, unfortunately, make a direct reference to "judicial" proceedings conducted without *in rem* jurisdiction. Nevertheless, it indicates that the intent of those who included the annulment concept into Fed.R.Bankr.P. 601(c) was to validate actions rendered void by the existence of the automatic stay.

■■ We see no reason to distinguish here between non-judicial action made void only because they are in contempt of the automatic stay and those judicial proceedings which are deemed void, on jurisdictional grounds, because the automatic stay was still in effect when these non-bankruptcy courts acted. Instead, we find it reasonable to assume that, since it is only the existence of the automatic stay which denies a non-bankruptcy court its jurisdiction in the first place, the retroactive effect of a bankruptcy court's annulment of that automatic stay would effectively destroy the legal impediment to enforcement of the non-bankruptcy court's actions.

In making this legal determination, we feel it advisable to observe that this form of relief should be used sparingly by bankruptcy courts. The purpose of the automatic stay is, in great part, to shield the debtor from vexatious lawsuits while he attempts to place his financial affairs in order. This end will be destroyed if creditors generally come to believe that their post-petition actions against debtors or their property will usually be ratified by bankruptcy judges. Similarly, non-bankruptcy courts may see no purpose in delaying pending actions, patently outside their jurisdiction, if such jurisdiction is typically conferred upon them retroactively.

Nevertheless, this panel recognizes that this danger is rendered less eminent by the

control which the bankruptcy court retains over the granting of this form of relief. Where a bankruptcy judge finds that the automatic stay has been carelessly ignored, he can—and should—refuse to sustain the actions of the party seeking an annulment of that stay.

In the case at bar, however, we do not believe that the trial judge erred in annulling, rather than terminating, these debtors' automatic stay. This stay had already been lifted, by default, as to a senior secured creditor and the only thing which prevented foreclosure, in any event, was the willingness of the appellees to cure the debtors' default. Given this situation, we do not feel that it was inappropriate for the trial court to overlook the appellees' conduct in obtaining a state court judgment before seeking leave of the bankruptcy court to pursue that judgment. This is particularly true in light of the broad language used by the bankruptcy court in lifting the automatic stay as to Weyerhaeuser—which language might have been construed by the appellees as applying to all creditors holding an interest in this real property.

Under these same facts, the panel finds cause sufficient for the annulment of the automatic stay as to these appellees, regardless of the question of the debtors' alleged equity in the Upland real property. In this regard, lack of equity is only one basis for relief from an automatic stay. Also important, in this case, were the adequate protection and equitable concerns of the appellees in having to carry the burden of the debtors' obligation to Weyerhaeuser after the Mellors failed to oppose that secured creditor's request to lift the automatic stay. Inasmuch as the Mellors never actually attempted to alleviate that burden, notwithstanding their subsequent statement of willingness to do so, we cannot say that the trial court erred in refusing to continue the imposition of this duty upon the appellees.

## III. CONCLUSION

The panel finds and holds that the trial court's annulment of the automatic stay and its ratification thereby of the April 13, 1981 judgment of the California Superior Court were proper, pursuant to 11 U.S.C. § 362(d) and 28 U.S.C. § 1471(e) and under the specific facts of this case.

VOLINN, Bankruptcy Judge, dissenting.

### I.

What is of concern with the ruling of the majority is that it applies the concept of annulment without a showing of strong justification for treating the stay as if it did not exist to begin with. Violation of a Section 362 stay is a serious matter which should not be disregarded, let alone approved, without compelling reason. Any breach in this concept will only create precedent for further breaches. Eventually, a situation will come about, as a result of incremental rulings, where any creditor may contend that there is sufficient precedent so as to have warranted litigating in another court despite the stay. The creditor may thus proceed calculating that subsequent litigation in bankruptcy court could effect not only lifting of the stay but also remission of and retroactive sanction for violation of the Section 362 stay. Ingenious counsel can always extrapolate from precedent to a particular matter. It is therefore a reasonable prospect, given this case, that considerable such precedent may develop, thereby attenuating the present certainty which attends the Section 362 stay.

As to existing precedent, the action of appellee is void. E.g., *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982) ("Actions taken in violation of the automatic stay are void and without effect"). *See also* 2 *Collier* (15th Ed.) Section 362.11; Kennedy, *The Automatic Stay in Bankruptcy,* 11 Journal of Law Reform 177 (1978) (Footnote 411 states: "The court may wish to grant such relief (lifting the stay) in order to remove any cloud as to the validity of an act done in *technical violation* of the stay and to eliminate the necessity for a formal repetition of the act." emph. supp.).

Here, there was no technical violation. The substantive rights of the debtor and the trustee were affected. The debtors initially filed a Chapter 13 which was later converted to a joint Chapter 11 where a trustee was appointed. The underlying lien held by Weyerhaeuser was in default which the appellee stepped in to cure. The appellee, however, continued on with the state action, obtaining a summary judgment of forfeiture on April 3, 1981. Neither the Chapter 13 trustee nor the Chapter 11 trustee were joined as necessary parties in that action.

## II.

The majority reasons that since there was a judgment lifting the stay in favor of Weyerhaeuser, it is justification for considering it being lifted as to other parties. However, it is difficult to understand why it follows that a complaint filed by Weyerhaeuser, for lifting of the stay as to it, should result in a general vacation of the stay with regard to the subject property. The trustees in the Chapter 13 and Chapter 11, as well as the debtor, could have had reasons for not resisting lifting of the stay, as to one party, which might not have applied to other parties. Since appellees cured the default as to Weyerhaeuser, there was the possibility or likelihood that the trustee's response to Weyerhaeuser's complaint was affected thereby. In terms of *res judicata,* issues as to other parties, including defenses, or conditions warranting the other alternative applications of Section 362, were not resolved. Even if the stay were lifted as to Weyerhaeuser the debtor might have defenses in state court, or might cure the default, or otherwise settle with the appellee. It should be noted that the state court action which appellee pursued in violation of the stay was not the Weyerhaeuser action but one which he had filed prior to bankruptcy wherein the debtor had filed a cross-complaint. It does not follow that lifting of the stay for one party is a lift for all.

## III.

The majority cites Bankruptcy Rule 601(c), which has been effectively displaced by Section 362(d), as providing support for its position. There is an advisory committee comment which simply repeats the language of the rule relative to the alternative of annulment "in appropriate cases". The language is general. It allows of the same limitation to technical violations posited by Professor Kennedy. Moreover, the legislative history relative to Section 362 is specific, pointing out a number of instances where relief, including annulment, might be granted:

> "Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances." House Report No. 95–595; 95th Cong., 1st Sess. (1977) 343–4; cf. Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 52–3, U.S.Code Cong. & Admin.News, pp. 5787, 6300.

In this case, considering that property of the estate is involved, subject to serious claims by the debtors and the trustee, it is difficult to comprehend how appellee's action in violation of the stay was not connected with the bankruptcy case.

## IV.

Finally, one must consider the issue before us in the context of Section 362 of the Bankruptcy Code which provides a focus for

one of its most basic policies. The legislative history [1] forcefully states that the stay is fundamental to the rights of the debtors and creditors.

The appellee, by not filing a brief, has not helped. The record in this case is such that it should not provide precedent for eroding the integrity of the Section 362 stay.

On the basis of the foregoing considerations, I am constrained to dissent.

1. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

   The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 340–2; Senate Report No. 95–989 95th Cong., 2d. Sess. (1978) 49–51, U.S.Code Cong. & Admin.News, pp. 6296–97.