In re James Maurice **OLIVER**, Debtor.

**Bankruptcy No. 4–81–1619 (M–1).**

United States Bankruptcy Court,
D. Minnesota.

March 28, 1984.

Gary J. LaFleur, Minneapolis, Minn., for petitioner.

Hendrick DeJong, James M. Pfau, Faegre & Benson, Minneapolis, Minn., for respondent.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on the motion of the debtor to void a mortgage foreclosure sale. Gary J. LaFleur appeared on behalf of the debtor. James M. Pfau and Hendrik De Jong appeared on behalf of Norwest Bank Minneapolis. Based on the filés and records, the briefs, and the argument of counsel, the Court makes the following:

### FINDINGS OF FACT

1. On August 14, 1981, James Maurice Oliver (debtor) filed a voluntary petition for relief under Chapter 7 of Title 11. The Debtor's schedules listed Northwestern National Bank, now known as Norwest Bank Minneapolis (Norwest), as the holder of a mortgage secured by real property located at 3603 Clinton Avenue South, Minneapolis, Minnesota. Pursuant to Minn. Stat. § 510.01, debtor claimed this real property exempt.[1]

2. On October 5, 1981, a creditor, Kurt Sizer, filed a complaint objecting to debtor's exemption of the Clinton Avenue property. The complaint alleged that the property was not homesteaded property within Minn.Stat. § 510.01, could not be exempted and thus was property of the estate.

3. On March 1, 1982, the debtor was granted a discharge. That discharge was revoked and deemed waived in an order of the Honorable Hartley Nordin dated November 11, 1982.

4. In an order dated March 1, 1983, the Honorable Kenneth G. Owens granted the debtor's motion for summary judgment dismissing Sizer's complaint. Judge Owens specifically stayed the effect of this dismissal until April 29, 1983. No appeal was taken from this order, therefore, on April 29, 1983, the order became final and the Clinton property was deemed exempt property.

5. On April 5, 1983, Norwest began foreclosure by publication on the Clinton property.

6. The sheriff's sale of the Clinton property was held on June 15, 1983.

7. On December 15, 1983, debtor filed a motion to enforce the automatic stay and have the foreclosure vacated.

## CONCLUSIONS OF LAW

This case presents essentially two issues. First it must be determined whether the Clinton Avenue property was property of the estate and protected by the automatic stay at the time Norwest commenced foreclosure proceedings. If it is determined the automatic stay was in effect, it must then be decided what effect violation of the stay has on the validity of the foreclosure.

11 U.S.C. § 541(a)(1) states that a debtor's estate is comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." The filing of a voluntary petition with the Bankruptcy Court commences the case. 11 U.S.C. § 301. Pursuant to 11 U.S.C. § 362, the filing of a petition also triggers the protection provisions of the automatic stay. 11 U.S.C. § 362(c)(1), provides for "the stay of any act against property of the estate which continues until such property is no longer property of the estate." Further, 11 U.S.C. § 362(c)(2) provides that the stay of any other acts terminates upon the earli-

1. Minnesota is one of the minority of states which has not exercised its right provided by § 522(b)(1) to "opt out", i.e. prohibit its residents from claiming the bankruptcy exemp-

tions. Minn.Stat. § 510.02 allows the exemption of "the house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated ....."

est of the time the case is closed, dismissed, or discharge is granted or denied. *See* House Report No. 95–595, 95th Cong., 1st Sess. 343–4; Senate Report No. 95–989, 95th Cong., 2nd Sess. 52–53 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787.

The debtor may remove certain interests in property from the estate by claiming the property as exempt pursuant to 11 U.S.C. § 522(b)(1) or § 522(b)(2). These exemptions are commonly referred to as "federal exemptions" and "state exemptions" respectively.[2]

█ In the instant case, the debtor's real property at 3603 Clinton Avenue South became property of the estate on August 17, 1981, when the Chapter 7 petition was filed. Debtor claimed the Clinton property exempt; however, a creditor brought an adversary complaint objecting to this discharge. This objection was not resolved until March 1, 1983, when Judge Owens granted debtor's motion for summary judgment dismissing the creditors' complaint objecting to exemption of the Clinton property. This order, however, was stayed until April 29, 1983. Accordingly, the Clinton property did not leave the estate until April 29, 1983, when Judge Owens' dismissal became effective and the property was deemed exempt. Thus, the Clinton property was still in the debtor's bankruptcy estate on April 5, 1983, when Norwest began foreclosure proceedings.

Case law indicates, and Norwest concedes that the foreclosure proceedings against property of the estate violates the automatic stay provided by 11 U.S.C. § 362. *See In re Scott*, 24 B.R. 738 (Bkrtcy.M.D.Ala.1982) (foreclosure sale was in violation of the automatic stay); *In re Murray*, 5 B.R. 732 (Bkrtcy.D.Md.1980) (foreclosure proceedings violated the automatic stay). Therefore, the result in this case turns on the more difficult issue of the effect of a violation of the automatic stay on the validity of the violative proceedings.

Specifically, is the foreclosure sale on the Clinton property void as a matter of law, or simply voidable.

By strict, literal definition, a void instrument or transaction is one which is wholly ineffective, inoperative, and incapable of ratification. A void act would, therefore, have no force or effect "so that nothing could cure it". *Black's Law Dictionary*, 1411 (5th ed. 1979). The word voidable, on the other hand, describes a defective transaction or act that may be declared void, yet may be cured by confirmation or ratification. The Minnesota Supreme Court recognized the distinction in *Dayton v. Nell*, 43 Minn. 246, 45 N.W. 231 (1890), by stating that acts which are strictly void in the technical sense of the word are incapable of ratification, "while those that are voidable [merely] may be" ratified. *Id.* at 248, 45 N.W. 231.

While the definitional distinction between the words void and voidable appears to be clear, in use this distinction is less clear. For example, in *Purcell v. Thornton*, 128 Minn. 255, 150 N.W. 899 (1915), the mortgagee proceeded to foreclose by advertisement, yet the mortgage instrument did not contain the necessary language granting a power of sale. The plaintiff/mortgagor was aware that the mortgagee did not have the power to foreclose by advertisement; nonetheless, he sat patiently for five years while the defendant and his grantors occupied and improved the land before bringing suit. The *Purcell* court stated the "attempted foreclosure was *clearly void* because the mortgage contained no power of sale, and therefore could be foreclosed only by action." *Id.* at 257–58, 150 N.W. 899 (emphasis added). In the face of the plain meaning of this language, however, the court found the plaintiff was estopped from claiming title to the land by his silence in view of his full knowledge of the invalid foreclosure and the subsequent owner's reliance on his acquiescence.

---

**2.** Those references are misnomers, however, since § 522(b)(2) includes exemptions under federal law other than those found in § 522(d) as well as exemptions provided by state or local law. The alternative exemptions might more properly be referred to as "bankruptcy exemptions" and "non-bankruptcy exemptions".

Thus, the court found the foreclosure sale void but upheld the defendant's right to the property.

■ Case law regarding whether acts in violation of the automatic stay are void or voidable is inconsistent. Some courts have found "an action taken in violation of the automatic stay is void *Ab initio.*" *Miller v. Savings Bank of Baltimore (In re Miller)*, 10 B.R. 778 (Bkrtcy.; D.Md.1981) (repossession of debtor's car eighteen days after the petition was filed violated the automatic stay and was void). *See also Advent Corp. v. Fidelity & Deposit Company of Maryland (In re Advent)*, 24 B.R. 612 (Bkrtcy. 1st Cir.1982) (an action to cancel a bond was an act in violation of the automatic stay and therefore void and without effect); *Young v. Critton (In re Young)*, 14 B.R. 809 (Bkrtcy.N.D.Ill.1981) (tax sale to satisfy a prepetition obligation was in violation of the stay and was null and void); 2 Collier on Bankruptcy, 362.11 (15th ed. 1979) (actions taken in violation of the stay are void and without effect). Other courts have held violations of the automatic stay to be "voidable at the debtor's or trustee's insistance rather than absolutely void." *Hadsell v. Philadelphia Life Insurance Company v. Estate of Fuel Oil Supply Terminaling, Inc. (In re Fuel Oil Supply and Terminaling, Inc.)*, 30 B.R. 360 (Bkrtcy.N.D.Tex.1983). In *Hadsell*, Judge Flowers found "the characterization of every violation of § 362 as being absolutely void is inaccurate and overly broad." *Id.* at 362. The opinion supports this theory by pointing out that some good faith actions taken under 11 U.S.C. § 542(c) and § 549(c) [3] are allowed even though "they may be technical violations of the stay." *Id.* In addition, pursuant to the power to annul found in 11 U.S.C. § 362(d), a bankruptcy court may ratify a state court judgment obtained in violation of the automatic stay. *Mellor v. Pistole (In re Mellor)*, 31 B.R. 151 (Bkrtcy. 9th Cir.1983). In light of this power to validate, violations of the stay are voidable rather than void because a *void* act could not be ratified or cured. *Black's Law Dictionary*, 1411 (5th ed. 1979).

While there is case law supporting both the debtor's assertion that actions in violation of the stay are void and Norwest's argument such acts are voidable, I think the better rule is that acts in violation of the automatic stay are voidable rather than void. A holding that violative acts are strictly void and incapable of ratification is too narrow in light of the court's power to annul under 11 U.S.C. § 362(d) and certain transfers allowed pursuant to 11 U.S.C. §§ 542(c) and 549(c). This is not to say that this court will not void acts which violate the automatic stay in appropriate circumstances. The instant case, however, does not present such circumstances.

■ Judge Owens' order on March 1, 1983, dismissed the adversary complaint challenging debtor's exemption of the Clinton property. The effect of this order was stayed until April 29, 1983. In all likelihood, there was confusion as to the effect of Judge Owens' order and his stay of that order. Even though Norwest commenced foreclosure proceedings prior to the effective date of Judge Owens' order, the debtor failed to bring a motion for enforcement before the Clinton property left the estate on April 29, 1983. Indeed the debtor, while possibly legally uninformed, made no attempt to enforce the automatic stay during the time of advertisement. Nor did he take steps to enforce his rights prior to the Sheriff's sale. Had the debtor asserted his rights, Norwest could have stopped advertisement, cancelled the foreclosure sale, and reinitiated the foreclosure proceedings at an appropriate time. The debtor did nothing until mid December, 1983. In light

---

**3.** § 542(c) protects an entity that has neither actual notice or knowledge of the case and transfers, in good faith, property that is payable to the trustee. § 549(c) precludes a trustee from avoiding a transfer of property to a good faith purchaser without knowledge of the commencement of the case who pays present fair value or buys at judicial sale, real property not located in the County where the case was commenced if the recording office does not contain a copy of the petition.

of the debtor's inaction for approximately seven months, I find voiding Norwest's actions inappropriate.

Under all the circumstances present in this case, Norwest's foreclosure proceedings were valid. Norwest has, however, consented to extend the debtor's period of redemption for 60 days.[4] I think Norwest's offer is reasonable and that a 60 day extension of the redemption period adequately compensates the debtor for whatever harm may have resulted from Norwest's publication two weeks prematurely.[5]

THEREFORE, IT IS ORDERED:

The debtor's right to redeem the property legally described as Lot 14, Block 3, Vinton Park Addition, Hennepin County, Minnesota, is extended 60 days from the later of (a) the date of this order; and (b) the expiration of the original redemption period provided by the mortgage and Minnesota statutes.

---

4. Unfortunately, nothing in the record indicates what the period of redemption is.

5. I do not think this extension conflicts with the holding in *Johnson v. First National Bank of Montevideo,* 719 F.2d 270 (8th Cir.1983). In *Johnson,* the Eighth Circuit Court of Appeals held a Bankruptcy Court may not "toll or sus-

pend the running of a statutory period of redemption absent fraud, mistake, accident, or erroneous conduct on the part of the foreclosing officer." *Id.* at 277. No such mistake and erroneous conduct exists here. In any case, the creditor has consented to the extension.