In re COLUMBUS BROADWAY MARBLE CORPORATION, Debtor.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Plaintiff,

v.

COLUMBUS BROADWAY MARBLE CORPORATION, Defendant.

Bankruptcy No. 182–11321–260.
Adv. No. 186–0165.

United States Bankruptcy Court,
E.D. New York.

March 22, 1988.

Robert P. Herzog, New York City, for trustee.

Lane & Mittendorf by William E. Kelly, New York City, for Massachusetts Mut. Life Ins. Co.

Smyth, Lack & Novick by Donald Novick, Huntington, N.Y., for Estate of Robert J. McConnell.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

Massachusetts Mutual Life Insurance Company ("Mass. Mutual") issued a life insurance policy ("policy") to the debtor, Columbus Broadway Marble Corporation ("Columbus" or "debtor"), on the life of one of the debtor's principals, Robert J. McConnell ("McConnell"). The debtor was designated in the policy as the owner and beneficiary. After the principal died, Mass. Mutual commenced an action in the state court in New York to void the policy, alleging it was fraudulently obtained. The action was instituted after the debtor had commenced the within bankruptcy case by the filing of a petition for relief under Chapter 11, which was later converted to Chapter 7. Mass. Mutual contends that it had no knowledge of the debtor's bankruptcy until sometime after commencing the state court action. The trustee commenced an adversary proceeding to remove the state court action. Mass. Mutual has cross-moved, in the event the action is so removed, seeking that the proceeding be remanded back to the state court.

## FACTS

The facts are undisputed. The debtor was engaged in the business of fabricating and installing marble products from its principal place of business in Long Island City, New York. It is a wholly-owned subsidiary of the Peter Miller Realty Corporation ("Miller"). Miller had two 50% shareholders, McConnell and Roberta Cohen ("Cohen"). On January 16, 1981, McConnell and Cohen entered into a document styled "PETER MILLER REALTY CORP. *CROSS–PURCHASE AGREEMENT*" ("Agreement"). Also joining in the Agreement was an attorney, acting on behalf of the Agreement's "trustee." The Agreement provides, in part, that in the event of the death or disability of one of the shareholders, the remaining shareholder shall have the right to purchase the 50% interest of Miller previously held by the deceased or disabled shareholder. It further provides a means for funding such purchase by procuring life and disability insurance policies on each shareholder with the other shareholder being the beneficiary. Thus, pursuant to the Agreement, Cohen was to be the beneficiary of the policy which was to designate McConnell as the insured, and McConnell was to be Cohen's beneficiary. The Agreement also requires the shareholders to deposit with the "trustee" their respective policies of insurance and shares of stock, without in any wise affecting their rights as shareholders, until such time as the disability or death contingency occurred. Although the Agreement has blank places for the insertion of the applicable policy numbers and the names of insurance companies, that information was not inserted. From the facts presented to this court, there was no further amendment to the Agreement.

On May 1, 1981, three and one-half months after the principals signed the Agreement, Mass. Mutual issued the subject policy of insurance only on the life of McConnell for the face amount of $125,000. Under the terms of the policy, the debtor owned the policy, paid its premiums and was the named beneficiary therein. It is to be noted that while the policy's beneficiary

is the debtor, it had been intended by the Agreement that Cohen be the beneficiary of McConnell's policy and vice-versa.

On November 23, 1981, seven months after the policy was issued, McConnell was fatally gunned down in front of his home.[1] On December 10, 1981 the debtor submitted a claim to Mass. Mutual seeking payment of the $125,000 face amount of the policy. The claim was signed by Roberta Cohen as the Secretary/Treasurer on behalf of the debtor corporation-claimant.

Columbus filed a petition for relief under Chapter 11 on May 20, 1982. The debtor's statement of financial affairs listed the $125,000 insurance proceeds as an asset of the estate in the hands of a third person.

Apparently unaware of the debtor's bankruptcy petition, Mass. Mutual commenced suit against the debtor on April 28, 1983 in the Supreme Court of New York, Queens County. Mass. Mutual contested the validity of the insurance policy, alleging the debtor failed to disclose the conflicting terms of the Agreement with those of the policy when Columbus applied for the policy. Mass. Mutual claims that had it known of the Agreement's terms, it would not have issued the policy.

The debtor's counsel in the state court suit was not the debtor's bankruptcy counsel, who appeared before and whose retention was authorized by this court. The state court counsel of the debtor did not defensively plead in its January 7, 1984 answer that this bankruptcy case was pending and that the action was stayed by virtue of § 362(a) of the Bankruptcy Code. However, 12 days after receipt of the debtor's answer, Mass. Mutual admittedly first learned of the debtor's bankruptcy petition.

On February 16, 1984, this court, after notice and a hearing, converted the Chapter 11 case to Chapter 7 and appointed a trustee. Subsequently, the estate of Robert J. McConnell brought on a motion before this court to lift the stay to permit it to intervene in the insurance dispute in the state court. In documents filed with this court

and in statements made to it relating to lifting the stay, the trustee erroneously misrepresented that the state court action was commenced pre-petition and that the suit was progressing there. The court, relying upon the representations and the trustee's consent, thereupon lifted the stay to permit the McConnell estate to move to intervene in the state court action, provided the state court permitted the intervention, and vacated the stay in all respects as relates to the state court action. Thereafter, by order of the Honorable Eugene P. Bambrick, a justice of the Supreme Court of the State of New York, dated September 23, 1986, the McConnell estate was permitted to intervene in the state court action.

To further complicate matters, Columbus's remaining principal, Roberta Cohen, died of natural causes in August 1984, leaving the debtor corporation without living shareholders.

As noted *supra,* the trustee then brought on the instant application for removal, to which Mass. Mutual moved for remand in the event the request of the trustee be granted.

### ISSUES

1. Is the post-petition state court action void?

2. May the state court action be removed?

3. May the proceeding continue in the state court?

### DISCUSSION

I. Is the post-petition state court action void?

■ The parties agree that the post-petition commencement of the state court proceeding, without authorization of this court or the exceptions to the automatic stay contained in § 362(b), was violative of the automatic stay.

The threshold question is whether the state court proceeding is "void," therefore

---

1. The Homicide Unit of the Suffolk County Police Department in New York reports that the crime is unresolved.

incurable, or "voidable," capable of discretionary cure. Blacks Law Dictionary 1411 (5th ed. 1979). "Case law regarding whether acts in violation of the automatic stay are void or voidable is inconsistent." *In re Oliver*, 38 B.R. 245, 248 (Bkrtcy.Minn. 1984). The majority of courts find that violative actions of the automatic stay are void. They generally rely upon 2 Collier on Bankruptcy Para. 362.11 at 362–66 (15th ed. 1986) which states:

> "Actions taken in violation of the stay are void and without effect...."

Another source of their argument is contained in a statement by the Supreme Court in *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940), involving a post-petition real property foreclosure action, where it said:

> "[T]he action of the Walworth County Court was not merely erroneous but was beyond its power, void, and subject to collateral attack."

While the above cited portion of Collier recognizes an act in violation of the stay is void, Collier also recognizes post-petition actions may be voidable in discussing the word "annulling" as used in § 362(d). 2 Collier on Bankruptcy Para. 362.07 at 362–49 (15th ed. 1986). Furthermore, *Kalb* dealt with a post-petition mortgage foreclosure which altered the defendant's rights in property. In the instant case, the post-petition action did not alter the debtor's rights.

When the Supreme Court decided *Kalb* in 1940, bankruptcy referees had the express statutory power only to modify or terminate the automatic stay.[2] Thus, where the violation of the stay was statuto-rily proscribed and there did not exist an applicable exception, the violative action was void.

Now, however, courts have the statutory power to annul the automatic stay, pursuant to § 362(d).[3] *Albany Partners, Ltd., v. Westerbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir.1984), defining "annulling," declared "this provision evidently contemplates the power of the bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to 'terminating' [in § 362(d)] would be superfluous." *Albany Partners*, 749 F.2d at 675; *see Rosenfeld v. 122–24 East 25th Street Corp. (In re Silverman)*, 42 B.R. 509, 517 (Bkrtcy.S.D.N.Y. 1984).

Annulment may be appropriate where a violation of the stay is similar to those examples of the House Report, H.R.Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6300 where courts may lift the stay. The House Report provides:

> Subsection (d) requires the court, on request of a party in interest, to grant relief from the stay, such as the terminating, *annulling*, modifying, or conditioning the stay, for cause. The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause.... [A] desire to permit an action to proceed to completion in another tribunal may provide another cause.... The facts of each request will determine whether relief is appropriate under the circumstances.

---

**2.** No mention was made of the power to annul the stay in the leading bankruptcy treatise at the time of *Kalb*. J. Moore & E. Hayes, Gilbert's Collier on Bankruptcy Para. 368 at 236–37, Para. 373 at 240–41 (4th ed. 1937). No bankruptcy case prior to 1940, the date of *Kalb*, was found where the automatic stay had been annulled. An examination of the briefs submitted by all parties to the Supreme Court for its consideration failed to reveal that a stay could be annulled to legitimize a violation of the stay.

**3.** The Supreme Court approved Bankruptcy Rules, effective October 1, 1973, under the Bankruptcy Act that first allowed the bankrupt-cy courts to annul the automatic stay. Bkrtcy.R. 401(c), 411 U.S. 991, 1048 (1973), *reprinted in* 12 Collier on Bankruptcy Para. 401 at 4–1 (14th ed. 1978); Bkrtcy.R. 601(c), 411 U.S. 991, 1062 (1973), *reprinted in* 12 Collier on Bankruptcy Para. 601 at 6–1 (14th ed. 1978); Bkrtcy.R. 13–401(d), 411 U.S. 991, 1177, *reprinted in* 15 Collier on Bankruptcy Para. 13–401 at 13–401–1 (14th ed. 1978); *see* M. Bienenstock, Bankruptcy Reorganization 131 n. 86 (1987). Congress included the substance of these Bankruptcy Act Rules in § 362(d) of the Bankruptcy Code.

(Emphasis added). *See Mellor v. Pistole (In re Mellor)*, 31 B.R. 151, 156 (Bkrtcy. 9th Cir.1983) (Volinn, B.J., dissenting), *rev'd*, 734 F.2d 1396 (9th Cir.1984); *Anderson v. Anderson (In re Anderson)*, 62 B.R. 448, 453 n. 4 (Bkrtcy.Minn.1986) (dicta); *cf. In re Tanksley*, 70 B.R. 429, 431 (Bkrtcy.E.D.Mo.1987). Case law also suggests that annulment should be done sparingly. *In re Albany Partners, Ltd., supra; In re Crawley*, 53 B.R. 40, 42 (Bkrtcy. Minn.1985).

Because of the unusual facts in this case, including the parties' conduct, and the little progress made in the state court, annulling the automatic stay is not warranted. The state court action is void.

## II. May the state court action be removed?

■ Civil actions affecting the rights of a defendant, which is a debtor in a bankruptcy case, may generally be removed. Removal is governed by 28 U.S.C. § 1452(a). Bankruptcy Rule 9027(a)(3)[4] permits the removal of post-petition actions. The 1983 Advisory Committee's Note to that Rule indicates that removal of post-petition actions applies to litigation not stayed by the Bankruptcy Code § 362(a) or by court order.[5] Accordingly, the trustee's application to remove the state court action and Mass. Mutual's motion to remand are both denied.

## III. May the proceeding continue in the state court?

■ The trustee has a substantial interest in the policy which is at issue between the parties. The insurance claim is property of the estate under § 541. *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89 (2d Cir.1988). The court has jurisdiction over property of the estate. 28 U.S.C. § 1334(d). This court is required to examine into the issues necessary to the ultimate determination of the rights and obligations of each of the parties in and to the insurance policy and its proceeds and to assure the proper administration of the estate for the best interest of the creditors. The power of the court to render a judgment fixing those rights and obligations or merely to hear and report on them depends on whether the insurance dispute is core or related. 28 U.S.C. § 157(b), (c) and (d); *see Fisher v. Insurance Co. of the State of Pennsylvania (In re Pied Piper Casuals, Inc.)*, 65 B.R. 780, 781 (S.D.N.Y.1986).

Mass. Mutual contends that if this court tries the insurance dispute, its right to contest the policy will not be timely, being barred by § 3203(a)(3) of the New York Insurance Law which states, in part: "[life insurance] policies shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue...." Mass. Mutual issued the policy to Columbus on May 1, 1981. McConnell, the insured, died on November 23, 1981.

Such an argument is without merit. Courts interpreting § 3203(a)(3) and its predecessor statutes have held that when an insured dies within the two year contestation period, the insurer "has a continuing right to contest the ... policy" beyond the

---

**4.** The Court is mindful that Bankruptcy Rule 9027(a)(3) requires the application for removal be filed within 30 days from the first filing of the initial pleading or the summons of the proceeding requested to be removed. The trustee's application for removal was filed some three years after the 30 day period, thus is untimely. However, even had the trustee timely filed the application for removal, it is of a type, as discussed *supra* in text, that should not be removed. In addition, inasmuch as this court holds that the action is void, the action is incapable of being removed in any event.

**5.** The state court action initiated by Mass. Mutual was stayed by § 362(a)(1) and did not fall within the § 362(b) exceptions to the automatic stay. As stated *supra* in text, the automatic stay was erroneously lifted, allowing the state court proceeding to continue, albeit solely to permit the McConnell estate to intervene. The order was signed on the strength of oral representations, contained on the record, and written representations that the state court proceeding was commenced pre-petition. As subsequently learned, the substance of the representations was incorrect; the state court proceeding was actually commenced post-petition. Thus, this court's order lifting the automatic stay was improper and is deemed vacated.

contestation period. *Simon v. Gov't Employees Life Ins. Co.*, 79 A.D.2d 705, 705, 434 N.Y.S.2d 447, 449 (1980); *see Greenbaum v. Columbian Nat'l Life Ins. Co.*, 62 F.2d 56, 58 (2d Cir.1932); *Friedman v. Prudential Life Ins. Co.*, 589 F.Supp. 1017 (S.D.N.Y.1984) ("[t]he incontestability clause [contained in life insurance policies issued in the State of New York] does not limit contest of a policy to a period of two years following the contract date unless the insured survives this two year period. As the insured in this action died within two years of the contract date, the defendant has a continuing right to contest the policy." *Id.* at 1020 (brackets added, citation deleted)).

Because Mass. Mutual instituted the action in the state court, it may commence a similar adversary proceeding in this court to enforce its rights and plead its defenses. The trustee is directed to appear in such adversary proceeding to protect whatever rights he and the estate may have in and to the policy. In the event Mass. Mutual fails to initiate such adversary proceeding within 30 days from the date of the entry of this court's order on this opinion, the trustee is directed to commence an adversary proceeding against Mass. Mutual to turn over the subject insurance proceeds.

That portion of the trustee's adversary proceeding which requests sanctions against Mass. Mutual is held in abeyance pending determination of such adversary proceeding as will be commenced.

Submit an order in accordance with this opinion.