**In re Shirley BRESLER, Debtor.**

**Bankruptcy No. 190–11167–260.**

United States Bankruptcy Court,
E.D. New York.

Oct. 4, 1990.

Delligatti, Kaschak, Julius & Kain by William H. Kain, Mineola, N.Y., for debtor.

Bachner, Tally, Polevoy & Misher by Paul H. Silverman, New York City, for Rose Schrieber.

### DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

This opinion addresses two motions. First, the Debtor moves to modify this court's order of April 30, 1990, which lifted the automatic stay *nunc pro tunc* allowing Ms. Rose Schrieber ("Schrieber"), the respondent, to take all action necessary and proper to satisfy her secured claim against real property owned by the Debtor and her husband known as Schrieberville Bungalow Colony. Second, the U.S. trustee moves to convert this case to a case under Chapter 7 of the Bankruptcy Code, or in the alternative, to dismiss it. For the reasons stated below, the motion of the Debtor is denied, and the motion of the U.S. Trustee is granted.

## FACTS

On or about December 24, 1981, Shirley Bresler (the "Debtor") and her husband, Solomon Bresler ("Mr. Bresler") purchased from Schrieber certain real property consisting of a bungalow colony near Swan Lake in the Town of Bethel, New York (the "Property"), which operates primarily from the first week in June through Labor Day each year. On that date the Debtor and her husband executed and delivered to Schrieber a mortgage note (the "Note") whereby the Debtor and her husband promised to pay to Schrieber $210,000.00 with interest at the rate of 10% per annum by installments of $5,000 in principal to be paid on August 1, 1982 and thereafter on the first day of August of each and every year to August 1, 1992 with interest to be paid quarterly on the first day of May, August, November, and February of each year. Interest and principal each year totalled approximately $26,000. The Note was secured by a mortgage on the Property recorded December 30, 1981. As additional consideration for the purchase, the Debtor and Mr. Bresler conveyed to Schrieber a security interest in the personal property used in connection with the colony.

Subsequent to the sale, the Debtor and her husband began having marital difficulties which culminated in an action for divorce in the Supreme Court of New York, wherein she sought equitable distribution of the marital assets including the Property. In an effort to resolve some of their difficulties the Debtor and her husband arranged for two of their two adult sons to manage the Property. As a result of their mismanagement they paid neither the aforesaid installment payments nor real estate taxes which became due.

No payment has been made on the Note since May 1, 1989. After Schrieber's repeated and unsuccessful demands that the Debtor and Mr. Bresler comply with the terms of the mortgage and pay the real estate taxes, Schrieber exercised her right to accelerate the indebtedness and initiated a State Court foreclosure proceeding against the Debtor and Mr. Bresler.

On February 1, 1990 a judgment of foreclosure and a bill of costs was entered in the state court action. The total amount found to be due and owing Schrieber was fixed at $175,978.08. A foreclosure sale was then scheduled for March 15, 1990 at 11:00 a.m. Prior to March 15th the attorney for the Debtor contacted Schrieber's counsel and requested a postponement of the sale based upon the Debtor's claim to have a purchaser who was in the process of obtaining financing. A two week adjournment was granted until March 29, 1990. On that date, no purchaser being available, the property was sold at the foreclosure sale to Scott Pere on behalf of PLP Ventures Inc. ("PLP") for $271,000. Since the total of unpaid taxes on the property at that time was about $90,000, and after additional usual expenses there remained little if any equity in the property.

Unknown to Schrieber, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on March 28, 1990, one day before the foreclosure sale.

Upon learning of the commencement of these bankruptcy proceedings and in order to proceed with the closing of the sale to PLP, Schrieber submitted to this Court on April 25, 1990 an Order to Show Cause to lift the automatic stay *nunc pro tunc* as of March 28, 1990, the date of the filing of the Chapter 11 petition. This Court signed the Order to Show Cause which called for a hearing before it on April 30, 1990, and provided for service on Debtor's counsel, by express mail on or before April 25, 1990. At the hearing held on April 30, 1990, Counsel for Schrieber presented proof of service on Debtor's Counsel. Neither the Debtor nor her attorney appeared at the hearing nor did they respond to the motion. After due deliberation and in consideration of the facts presented to it, this court lifted the stay, as of March 28, 1990, as requested by Schrieber. An order to that effect was thereupon signed by the undersigned on April 30, 1990, which was thereupon docketed in the office of the Clerk of this Court. For months thereafter, between April 30, 1990 and August 20, 1990 nothing more took place in this court by way of an appeal from this Court's order of April 30,

1990 nor by way of a motion under Bankruptcy Rule 9024 which refers to Rule 60(b) of the Federal Rules of Civil Procedure governing relief from judgment or orders. However, on August 20, 1990, the Debtor submitted to this court an Order to Show Cause to consider modification of the order of April 30, 1990 to the extent of deleting that portion of the Order which lifted the stay *as of March 28, 1990*. This court signed the Order to Show Cause and made it returnable before it on September 11, 1990 with notice to be served upon Schrieber's Attorney on or before August 24, 1990. At the hearing on September 11, 1990, this court was informed that a closing was conducted on August 24, 1990 at which time the Property was transferred to PLP's assignee Mr. Daniel Cohen ("Cohen"). In addition to the motion to modify the order of April 30, 1990, a motion was also brought on at said hearing date by the United States Trustee to dismiss this case on various grounds including the fact that the Debtor failed to appear at the initial and subsequently adjourned section 341(a) meetings and had not filed schedules of assets and liabilities.

The Court set down a further hearing for October 2, 1990 to consider and pass upon the disposition of both motions.

### ISSUES

1. Whether the Court was justified in entering the order of April 30, 1990 lifting the stay Nunc Pro Tunc?

2. Whether this case should be dismissed?

### DISCUSSION

*1. It was Proper to Enter the Order of April 30, 1990*

■ The commencement of a case in Bankruptcy triggers the automatic stay which protects the debtor from enforcement of pre-petition judgments obtained against the debtor or against property of the estate. *See* Section 362 of the Bankruptcy Code. A foreclosure sale conducted after the commencement of the Bankruptcy Case violates the automatic stay. This is true even if the party conducting the sale has no notice or knowledge that a petition in bankruptcy has been filed. *See In re Boston Business Machines*, 87 B.R. 867 (Bankr.E.D.Pa.1988); *In re Scott*, 24 B.R. 738 (Bankr.M.D.Ala.1982).

In this case the Property was sold to satisfy a judgment which the creditor, Schrieber, obtained prior to the commencement of the case. Even though the sale took place but one day after the petition in bankruptcy was filed, and neither the creditor nor the purchaser had notice or knowledge of the petition, the sale was thus conducted in violation of the automatic stay.

Notwithstanding the fact that the automatic stay was in effect at the time of the sale, the question presented to the Court and which it considered when it lifted the stay *nunc pro tunc* as of the date of the filing of this Chapter 11 case on March 28, 1990 was whether or not the sale was void or merely voidable. If the sale was void then no interest in the property was transferred to PLP and its assignee Cohen and no action by this Court could alter that result.

■ Authorities appear to be split as to whether an action taken in violation of the stay is void or voidable. Although there are a host of cases which follow the rule that the action is void, this Court is not inclined to adopt such a view in the instant case because of the extraordinary facts and circumstances involved.[1]

**1.** Some of the cases holding that an action taken in violation of the stay is void are: *In re Smith Corset Shops, Inc.*, 696 F.2d 971 (1st Cir.1982); *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2d Cir.1987), *cert. denied, sub nom. Rockefeller Group, Inc. v. 48th Street Steakhouse, Inc.* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *In re Ward*, 837 F.2d 124 (3d Cir.1988); *Smith v. First American Bank, N.A.*, 876 F.2d 524 (6th Cir.1989); *In re Taylor*, 884 F.2d 478 (9th Cir. BAP 1989); *Ellis v. Consolidated Diesel Electric Corp.*, 894 F.2d 371 (10th Cir.1990); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306 (11th Cir.1982); *In re Pettibone*, 110 B.R. 848 (Bankr.N.D.Ill.1990); *In re Marine Pollution Service, Inc.*, 99 B.R. 210 (Bankr.S.D.N.Y.1989); *In re Eisenberg*, 7 B.R. 683 (E.D.N.Y.1980).

Cases stating that stay violations are void can be broad and sweeping, *e.g. In re 48th Street Steakhouse, Inc.*, 835 F.2d at 431. However, most courts recognize that exceptions exist to the rule. *E.g., In-re Ward*, 837 F.2d at 126. Two such exceptions can be found in 11 U.S.C. §§ 549(c) and 542(c).[2] *In re Lampkin*, 116 B.R. 450, 452, 20 BCD 1312, 1314 (Bankr.D.Md.1990) (which espouses the "void" view based on the facts in that case).

As stated in *In re Lampkin, supra:*

[C]ourts that consider stay violations voidable look upon sections 542(c) and 549(c) not as exceptions to a general rule, but rather as evidence of a congressional intent that violations are voidable. *See In re Global Marine*, 881 F.2d at 178–79. These courts emphasize the equitable powers of bankruptcy and the necessity to flexibly accommodate situations not encompassed by the specific exceptions set out in the Code.

Courts holding that such sales are voidable find additional support for their argument in the fact that section 362(d) of the Bankruptcy Code allows the court to *annul* the stay. As was noted in *Sikes v. Global Marine:*

In section 362(d) Congress empowered the court to grant relief from the automatic stay 'by terminating, annulling, modifying, or conditioning' the stay. The power to annul authorizes retroactive relief even unto the date of the filing of the petition giving rise to the automatic stay. The power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay. Our colleagues in the Eleventh Circuit reached this conclusion in *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984) declaring that section 362(d)

expressly grants bankruptcy courts the option, in fashioning appropriate relief, of "annulling" the automatic stay, in addition to merely "terminating" it. The word "annulling" in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to "terminating" would be superfluous. *Sikes* 881 F.2d at 178.

This court took this position in *In re Columbus Broadway Marble Corp.*, 84 B.R. 322 (Bankr.E.D.N.Y.1988) and continues to believe that the better view is to characterize actions taken in violation of the stay as voidable, where the facts suggest such treatment.

In *In re Columbus Broadway Marble,* in discussing when it was appropriate to annul the stay, we stated:

Annulment may be appropriate where a violation of the stay is similar to those examples of the House Report, H.R.Rep. No. 595, 95th Cong. & Admin.News 1978, pp. 5787, 6300 where courts may lift the stay. The House Report provides:

Subsection (d) requires the court, on request of a party in interest, to grant relief from the stay, such as the terminating, annulling, modifying, or conditioning the stay, for cause. The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause.... [A] desire to permit an action to proceed to completion in another tribunal may provide another cause.... The facts of each request will determine whether relief is appropriate under the circumstances. *In re Columbus Broadway Marble Corp.*, 84 B.R. at 325.

---

Cases holding that such action is voidable include: *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir.1989); *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421 (9th Cir.1985); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984); *Matter of Germer*, 107 B.R. 217 (Bankr. D.Neb.1989); *In re Columbus Broadway Marble Corp*, 84 B.R. 322 (Bankr.E.D.N.Y.1988); *In re Clark*, 79 B.R. 723 (Bankr.S.D.Ohio 1987); *In re Oliver*, 38 B.R. 245 (Bankr.D.Minn.1984).

**2.** Section 549(c) provides that a trustee may not avoid a postpetition transfer to a good faith purchaser for value without notice of the case. Section 542(c) protects entities who lack notice or knowledge of the commencement of a case in bankruptcy and who transfer property of the estate otherwise deliverable to the trustee.

The practical reality of the situation in the instant case is that unless Schrieber could persuade the court to annul the stay, she would have had to conduct another foreclosure of the property. This certainly would have prejudiced her and the purchaser.

■ After a thorough examination of the facts elicited in the three days of hearings on the issue and supporting papers, this Court finds that it acted within its power as provided for by section 362(d) to lift the stay as of the date of the sale, in essence annulling the stay, and that it was appropriate for this court to grant such relief. To so rule does not reward a violation of the stay but recognizes that equitable factors require the annulment of the stay to avoid an unfair result.

At the hearing on April 30, 1990, this court found that not only did it appear that the debtor lacked equity in the property and that the property was not necessary to an effective reorganization in the absence of a likelihood of a plan being proposed, both of which factors mandate the lifting of the stay under section 362(d)(2), but more important, that there was an absence of adequate protection which justified the lifting of the stay pursuant to section 362(d)(1) in as much as the real estate taxes had not been paid for some time and were mounting everyday. Additionally, it was established that the sale had been properly advertised, and that it had been given sufficient notoriety leading this Court to conclude that the sale was conducted in a commercially reasonable manner.

At the September 11 hearing, counsel for the Debtor stated that the reason he did not appear at the hearing on April 30, 1990 in opposition to the motion to lift the stay was that he could not argue in good faith that the stay should not be lifted. He further stated that he was not aware that the motion was to have the stay lifted *nunc pro tunc*, as of March 28, 1990. It was also his belief that notwithstanding his failure to appear, undoubtedly an order would be signed lifting the stay as of April 30, 1990, that a new sale would have been necessary and that since arranging a new sale usually takes about a month, the Debtor would have time to obtain financing so that she might bid in at the new sale. However, counsel also stated at that hearing that the reason he waited until August 20, 1990 to submit an Order to Show Cause to reargue the order of April 30, 1990 was that it took the Debtor that long to arrange financing and it would have made no sense to move to reargue the motion unless she were in a better position to bid at a foreclosure sale. The Court notes that as of the date of the argument on September 11, 1990, no such financing was in place. Aside from commenting that her husband at one time had contracted with Cohen for the sale of the property for $500,000, the Debtor provided no proof of such offer nor a contract to support her statement. The Court had nothing before it to conclude that there was even a possibility of a price being bid for the property at a subsequent sale higher than that which was bid at the sale held on March 29, 1990. Thus it was clear to the Court that ordering a new sale would result in irreparable injury to the purchaser as a result of the delay and additional expense arising from such a re-sale.

In essence Debtor argues that this Court would have been persuaded in April to undo a commercially reasonable sale and require Schrieber to start the process all over again, in the remote possibility that in one month's time she would be in a position to arrange financing. This argument is less than persuasive, and what little merit it has disappears when one considers that the Debtor has yet to obtain firm financing.

By reason of all the foregoing Debtor's motion to reconsider the order of this Court dated April 30, 1990 is denied.

### 2. The Case Should be Dismissed.

■ The Debtor failed to appear at the Initial section 341(a) meeting on May 8, 1990, as well as the subsequent adjourned section 341(a) meetings on May 15, June 12 or July 17, 1990. In addition, she failed to file schedules of assets and liabilities. Finally in light of this Court's decision that the stay of the foreclosure sale was proper-

ly lifted, it is clearly unlikely that the debtor will be able to go forward with a Chapter 11 reorganization, a fact which suggests grounds for the dismissal of this case in accordance with the provisions of sections 1112(b) and (e) of the Bankruptcy Code. By reason of all of the foregoing the motion of the United States Trustee to dismiss the case is granted.

Submit orders consistent with this opinion.