Thomas A. SCHULZ, Patricia L. Schulz, Curtis S. Schulz, etc.,

v.

**HOLMES TRANSPORTATION, INC., John J. Molnar, Sr.**

Civ. A. No. 91–11454–WF.

United States District Court, D. Massachusetts.

Jan. 21, 1993.

---

David P. Angueira, Bowditch & Dewey, Garrahan & Lander, Framingham, MA, for plaintiffs.

Charles J. O'Malley, Johnson, O'Malley & Harvey, Boston, MA, for defendants.

## MEMORANDUM AND ORDER ON

(1) PLAINTIFFS' REQUEST FOR DEFAULT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 55(a) (# 8),

(2) PLAINTIFFS' REQUEST FOR DEFAULT JUDGMENT PURSUANT TO FEDERAL OF CIVIL PROCEDURE 55(b)(2) (# 9)

(3) MOTION OF DEFENDANT, JOHN MOLNAR, SR., TO SET ASIDE DEFAULT PURSUANT TO F.R.C.P. 55(a) AND FOR LEAVE TO FILE AN ANSWER LATE PURSUANT TO F.R.C.P. 12(a) (# 16),

(4) DEFENDANT, HOLMES TRANSPORTATION, INC.'S, MOTION TO STRIKE PLAINTIFFS' APPLICATION FOR DEFAULT (# 17),

(5) DEFENDANT, HOLMES TRANSPORTATION, INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2) AND (6) (# 18)

COLLINGS, United States Magistrate Judge.

## INTRODUCTION

The instant case, with the consent of parties, has been referred to the undersigned for all purposes, pursuant to 28 U.S.C. 636(c). The case concerns an automobile accident which occurred on May 26, 1989 on Interstate 495 in Westford, Massachusetts. The defendant John J. Molnar, Sr. (hereinafter, "Molnar") was an employee of defendant, Holmes Transportation, Inc. (hereinafter, "Holmes") and, at the time of the accident, was operating one of Holmes' trucks in the course of his duties as an employee of Holmes. The plaintiffs allege that Molnar operated the truck in a negligent manner, causing the truck to collide with the vehicle in which they were

driving which resulted in personal injuries to them.

Plaintiffs' Complaint (# 1) against Holmes and Molnar was filed on May 21, 1991; an Amended Complaint (# 3) was filed on June 18, 1991. On both of those dates, unbeknownst to the plaintiffs, Holmes was the subject of proceedings, which had been initiated on December 15, 1989, in the United States Bankruptcy Court in New Jersey. Holmes' insurer, Liberty Mutual Insurance Company (hereinafter, "Liberty"), although having known of the accident and the claims which plaintiffs were making, did not learn of Holmes' bankruptcy until March, 1991.

Because the plaintiffs' counsel had no knowledge of the bankruptcy proceedings involving Holmes, he took no action to obtain permission to file the tort suit from the Bankruptcy Court. When he learned of the bankruptcy proceedings, he retained counsel on plaintiffs' behalf in New Jersey and, on March 6, 1992, the Bankruptcy Court granted plaintiffs relief from the stay in an Order which read, in pertinent part:

> IT IS on this 6th day of March, 1992 ORDERED that claimants Thomas Schulz, Patricia Schulz, Katy Schulz and Curtis Schulz are hereby granted relief from the automatic stay to prosecute an action for personal injuries against the debtors; and it is further
>
> ORDERED that unless they apply for and receive further permission from the Bankruptcy Court, the Schulzes may enforce any judgment obtained in such an action only to the extent of the available insurance coverage.

Plaintiffs' Opposition, Etc. (# 20), Exhibit C.

Holmes failed to file and serve an answer within twenty days after the stay was lifted so on April 6, 1992, the plaintiffs applied for entry of default. See # 8. On April 17, 1992, Holmes moved to strike the application, see # 17, and to dismiss the amended complaint based on its contention that the complaint and amended complaint were void *ab initio*. See # 18.

Molnar was served with the amended complaint on June 17, 1991; no answer or other pleading was filed on his behalf. Plaintiffs requested a default. See # 6. A Notice of Default entered on November 14, 1991. See # 7. Plaintiffs requested a default judgment on April 6, 1992. See # 9. Molnar moved to set aside the default and for leave to file an answer late on April 17, 1992. See # 16.

Molnar claims that at the time he was served with process, he did not know what to do. Holmes was in bankruptcy, and he did not know whom to contact. Liberty alleges that Molnar was uncooperative at or about the time he was served. Lastly, plaintiffs seek to impose liability on Holmes for the acts of its agent, Molnar, and are not seeking damages from Molnar beyond the proceeds of the insurance policy which Liberty issued to Holmes.

## HOLMES' MOTION TO DISMISS

The first legal issue raised by Holmes' motion to dismiss is whether the complaint and amended complaint were void *ab initio* because they were filed during the pendency of the stay, or, on the other hand, were the complaint and amended complaint of no legal consequence until the Bankruptcy Court granted relief from the stay but fully operative once the stay was lifted? Holmes argues that the complaint and amended complaint were void *ab initio* and that plaintiff must file and serve a further amended complaint at this time to proceed with this litigation.[1] Plaintiffs take the position that the complaint and amended complaint were not void *ab initio* but merely voidable if the stay was not lifted. In other words, plaintiffs claim that no action could be taken in connection with the pleadings until relief from the stay was obtained, but once relief was granted, the litigation could proceed on the complaint

---

**1.** There is no statute of limitations issue because counsel for Holmes concedes that the complaint and amended complaint as against Molnar, who was never the subject of bankruptcy proceedings, are valid and any further amended complaint naming Holmes would relate back. *See* Rule 15(c), Fed.R.Civ.P.

and amended complaint which were filed during the time the stay was in effect.

If the stay was merely voidable, two further questions arise. The first is: Does a bankruptcy court's action in lifting the stay have the effect of "validating" prior pleadings which were filed in violation of the stay or is some further action by the bankruptcy court necessary to permit the case to go forward on the pleadings filed in violation of the stay? The second question is, if the bankruptcy court does have to do something more than merely lift the stay in order to permit a case filed during the stay to go forwards, did the Bankruptcy Court in New Jersey do that "something more?"

Title 11, U.S.C., § 362(a)(1) provides, in pertinent part:

(a) ... [A] petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

In the case of *Vahlsing v. Commercial Union Ins. Co., Inc.*, 928 F.2d 486 (1 Cir., 1990), the Court of Appeals for the First Circuit recognized the different answers given by courts to the question of the consequences to an action filed in violation of a stay, writing:

The actions [taken in violation of the stay] may be void *ab initio, see In re Advent Corp.*, 24 B.R. 612, 614 (Bankr. App. 1st Cir.1982), *but see Sikes v. Global Marine, Inc.*, 881 F.2d 176, 179 (5th Cir.1989) (acts violating stay are voidable rather than void) ...

*Vahlsing v. Commercial Union Ins. Co., Inc., supra,* 928 F.2d at 489.

In the case of *In re Advent Corp.*, 24 B.R. 612 (Bankr.App. 1 Cir.,1982), an appellate panel of bankruptcy judges in the First Circuit faced the situation in which a bonding company had issued a bond to Advent covering shipments of goods which Advent was importing into the United States. Advent filed a petition under Chapter 11, and, thereafter, the bonding company canceled the bond. The appellate panel wrote:

Under 11 U.S.C. § 362, the filing of a petition under Title 11 stays any proceeding against the debtor. An attempt to cancel a bond is a proceeding. *In re R.O.A.M., Inc.*, 15 B.R. [616] at 617, 8 B.C.D. [666] at 667. [Bkrtcy.D.Nev.1981] "The stay created by § 362 is an automatic statutory stay. 'Actions taken in violation of the stay are void and without effect.'" *In re Young*, 14 B.R. 809, 811, 8 B.C.D. 641, 641 (Bkrtcy N.D.Ill.1981) *quoting* 2 *Collier on Bankruptcy* P. 362.11 (15th ed. 1979). Acts done in violation of the stay are void *ab initio* regardless of lack of knowledge of the filing of the petition. *Id.; In re Wariner*, 16 B.R. 216, 218, 5 C.B.C.2d 865, 866 (Bkrtcy, N.D.Tex.1981); *In re Miller*, 10 B.R. 778, 780, 4 C.B.C.2d 530, 532 (Bkrtcy.D.Md.1981).

*In re Advent Corp., supra,* 24 B.R. at 614. Accordingly, the appellate panel held that the bonding company's action to cancel the bond was "of no effect" and that the bond continued to cover shipments until it expired of its own terms. *Id.*[2]

Subsequent cases decided in the First Circuit follow the precedent of *In re Advent Corp.* In the case of *In re Roxse Homes, Inc.*, 74 B.R. 810 (Bkrtcy.D.Mass., 1987), the debtor owned an apartment complex; the U.S. Department of Housing and Urban Development ("HUD") held a first mortgage. The Roxse Homes Limited Partnership (hereinafter, "the partnership") sought to purchase the asset and applied to HUD for approval of the sale. The partnership commenced a suit in Supe-

**2.** I note that none of the four cases cited by the panel in *In re Advent Corp.* dealt with the filing of a civil action during the stay. The case of *In re R.O.A.M., Inc.* involved an action to enjoin the cancellation of a bond and *In re Young* dealt with the sale of real property for non-payment of taxes. Both *In re Wariner* and *In re Miller* concerned the repossession of a vehicle in which banks had security interests.

rior Court seeking specific performance. The Superior Court entered judgment; the Supreme Judicial Court ("SJC") affirmed. The Chapter 11 petition was filed after the Superior Court had entered judgment but before the SJC ruled. The SJC was not informed of the Chapter 11 filing before its decision; the fact was brought to its attention after the affirmance in the form of a motion for reconsideration, which was denied. The partnership sought relief from the automatic stay to enforce the judgment.

Judge Kenner ruled that the action of the SJC was "null and void." *Id.* at 814. She wrote:

> ... [I]t is settled law in this circuit that actions in violation of the automatic stay are void, not voidable. *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir.1982); *see also In re Corporacion de Servicios Medicos Hosp.*, 60 B.R. 920, 930 (D.P.R.1986), *aff'd* 805 F.2d 440 (1st Cir.1986).

*In re Roxse Homes, Inc., supra,* 74 B.R. at 815.[3] Judge Kenner clearly indicated that the acts taken after the filing of the petition were of no effect. Recalling that at the time the petition was filed, the appeal had been filed but not decided by the SJC, Judge Kenner, in granting relief from the automatic stay, did not "validate" the SJC decision. Rather, she wrote that "[t]he parties are free to take whatever action they deem appropriate with regard to the

pending appeal of the Superior Court decree." *Id.* at 819.

Judge Kenner's order was appealed to the District Court. Upon appeal, the order was affirmed; however, it is to be noted that Judge Kenner's ruling that the SJC's decision was null and void was not challenged in the appeal. *Roxse Homes, Inc. v. Roxse Homes Limited Partnership,* 83 B.R. 185, 187 (D.Mass., 1988).

In the Fifth Circuit case cited by the First Circuit in *Vahlsing,* i.e., *Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5 Cir., 1989), the Court noted the existence of the precedent represented by the cases of *In re Advent Corp.* and *In re Miller. Sikes, supra,* at 178. However, the Court in *Sikes* noted that there was precedent for the position that acts taken in violation of the stay were not void *ab initio* but rather voidable if relief from the stay was not thereafter obtained. The court cited three cases which typify this point of view, i.e., *In re Fuel Oil Supply and Terminaling, Inc.,* 30 B.R. 360 (Bkrtcy., N.D.Tex., 1983); *In re Oliver,* 38 B.R. 245 (Bkrtcy., D.Minn., 1984); *In re Brooks,* 79 B.R. 479 (Bankr. App. 9 Cir., 1987); *In re Sapp,* 91 B.R. 520 (Bkrtcy., E.D.Mo., 1988),[4] holding that actions in violation of a stay are merely voidable and, thus, capable of discretionary cure by action of the bankruptcy court.

The Fifth Circuit in the *Sikes* case, after comparing the two lines of authority, con-

---

**3.** *In re Smith Corset Shops, Inc.,* 696 F.2d 971 (1 Cir., 1982) a landlord brought an action for trespass and ejectment against Smith Corset Shops for non-payment of rent. A default judgment and execution were issued by a state court. Pursuant to the execution, a constable moved Smith's property to a warehouse. Unbeknownst to anyone, Smith filed a Chapter 11 petition four days before the state court action. No one associated with Smith told the landlord. Smith sued the landlord for conversion. The Court of Appeals, while stating that "[o]rdinarily, orders issued in violation of the stay are void" [citation omitted], found that on the facts of the case, equitable considerations mandated that no liability for conversion could be found against the landlord. The "equitable considerations" referred to are not applicable to the instant case.

**4.** In the case of *In re Fuel Oil Supply and Terminaling, Inc.,* the bankruptcy judge wrote that

"... the characterization of every violation of § 362 as being absolutely void is inaccurate and overly broad." 30 B.R. at 362. The facts of that case do not resemble the instant case. *In re Brooks* involved a transfer of property and relied on the Ninth Circuit case of *In re Sambo's Restaurants,* 754 F.2d 811 (9 Cir., 1985) which held that a complaint filed in violation of the stay is not void in all respects but may be considered as an amendable proof of claim. *Id.* at 816. *In re Oliver* involved a mortgage foreclosure, the Court writing that "... the better rule is that acts in violation of the automatic stay are voidable rather than void" and that the bankruptcy court has the power to ratify acts taken in violation of the stay. 38 B.R. at 248. *In re Sapp* also involved a property transfer, the Court ruling that "it is generally accepted that actions taken in violation of the automatic stay are not void but voidable," 91 B.R. at 522, citing *In re Brooks.*

cluded the better rule is that the actions are voidable rather than void. *Sikes v. Global Marine, Inc., supra,* 881 F.2d at 178. The Court noted that the bankruptcy court had inherent powers, given to it by Congress, to *annul* (as opposed to merely terminating) an automatic stay, pursuant to 11 U.S.C. § 362(d) and held that:

> The power to annul authorizes retroactive relief even unto the date of the petition giving rise to the automatic stay. The power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay.

*Id.* The Court also noted that the Eleventh Circuit has come to the same conclusion, *see In re Albany Partners, Ltd.,* 749 F.2d 670 (11 Cir., 1984), and that a secondary authority also construes the power granted by § 362(d) to annul as allowing the bankruptcy court to act retroactively and "... thus validate actions taken by a party at a time when he may have been unaware of the existence of the stay." *Sikes v. Global Marine, Inc., supra,* 881 F.2d at 179 quoting 2 *Collier's Bankruptcy Manual,* § 362.06 (3d ed. 1983).[5] The Court in the *Sikes* case also noted buttressed its conclusion by noting that the Bankruptcy Code provides exceptions to the automatic stay, writing:

> If everything done post-petition were void in the strict sense of the word, these provisions would either be meaningless or inconsistent with the specific mandate of sections 362(a).

*Sikes, supra,* 881 F.2d at 179.

Judge Johnson dissented in *Sikes* on the ground that he was not persuaded that the bankruptcy court had intended to annul the stay so as to retroactively validate an otherwise void filing. *Id.* at 180–81. However, he agreed with the proposition that the bankruptcy court had the power, and subsequently the Fifth Circuit adhered to its

ruling in *Sikes* that the power existed. *See Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5 Cir., 1990).

I note that, with one exception, none of the cases in the First Circuit which hold that acts done in violation of the stay are void *ab initio* discuss the question of a bankruptcy court's power to annul the stay codified in § 362(d). The effect of the power to annul in this context seems first to have been raised in the case of *In re Mellor,* 31 B.R. 151 (Bankr.App. 9 Cir., 1983) in which the panel held that the power to annul gave the bankruptcy court the power to lift the automatic stay and ratify a state court judgment of foreclosure which had been obtained in violation of the automatic stay. *Id.* at 154. The Court in *Mellor* noted that "... the Advisory Committee's Note accompanying Fed.R.Bankr.P. 601(c)—a predecessor of § 362(d)—explains the role of annulment ..." and quoted the language of the committee as follows:

> 'Whether the enforcement of a lien against property in the bankruptcy court's custody by an act or proceeding after bankruptcy without permission of the bankruptcy court is void has been the subject of conflicting views by the courts and commentators. See 1 Collier, para. 2.62[1] & [2] (1968). This rule consists [sic] with the view that such an act or proceeding is void, but subdivision (c) recognizes that in appropriate cases the court may annul the stay so as to validate action taken during the pendency of the stay.'

*Id.*

It is noted that one of the three members of the panel dissented from the holding. *Id.* at 155–157.

The case of *In re Mellor, supra,* decided in 1983, was cited and followed by the court in *In re Oliver, supra,* 38 B.R. at 248. In 1987, the appellate panel in *In re*

---

5. The Court in *Sikes* noted that its decision was not in conflict with the Supreme Court's decision in *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) since at the time the *Kalb* case was decided:

> ... bankruptcy referees had the express statutory power only to modify or terminate the automatic stay. The power to annul the stay

had not been authorized. Accordingly, where the violation of the stay was statutorily proscribed and an applicable exception did not exist, the violative act was void. That scenario no longer applies.

*Sikes v. Global Marine, Inc., supra,* 881 F.2d at 179, footnote 2.

*Brooks, supra,* cited the power to annul as evidence of "... Congressional intention that acts taken in violation of the stay are not void but voidable." *In re Brooks, supra,* 79 B.R. at 482. In 1988, the Court in *In re Sapp, supra,* cited *In re Brooks, supra,* for the same proposition. 91 B.R. at 522. Neither case cites *In re Mellor, supra.* The next case to discuss the power to annul in this context in any detail is *Sikes v. Global Marine, Inc., supra.*

The one case in the First Circuit which discusses the power to annul in this context is Judge Kenner's decision in *In re Roxse Homes, Inc., supra.* Her decision was issued in 1987 before the *Sikes* case was decided but was after the Eleventh Circuit's decision in the case of *In re Albany Partners, Ltd., supra.* While not citing the *Albany Partners* case, Judge Kenner recognized the argument based on the power to annul but rejected it on policy grounds. Relying on the Third Circuit case of *Association of St. Croix Condominium Owners,* 682 F.2d 446 (3 Cir., 1982), she reasoned that the protections of the automatic stay would be severely diluted if debtors had to fear that actions brought against them during the time they have the protections of the stay could later be ratified by a retroactive annulment of the stay. *In re Roxse Homes, Inc., supra,* 74 B.R. at 814–15. The same policies underlay the opinion of the dissenting judge in *In re Mellor, supra.*

Lastly, it is of note that the references to the issue in cases decided by the First Circuit are not definitive. For example, in *Vahlsing v. Commercial Union Ins. Co., Inc., supra,* 928 F.2d at 489, the Court in March, 1991 wrote that "... [t]he actions [taken in violation of the stay **may** [6] be void *an initio* ..." citing *In re Advent Corp., supra,* but in the same sentence with the directive *"but see"* cited the *Sikes* case noting the holding as being "acts violating stay are voidable rather than void." Three

months later, the First Circuit decided the case of *Interstate Commerce Commission v. Holmes Transportation,* 931 F.2d 984 (1 Cir., 1991). In it, the Court outlined the policy considerations behind the automatic stay provision, noting that it is designed to effect an immediate freeze of status quo at the outset of bankruptcy proceedings and that it protects the debtor in nonbankruptcy fora. *Id.* at 987. The Court then wrote that:

> Judicial actions and proceedings, as well as extrajudicial acts, in violation of the automatic stay, are generally void and without legal effect. *In re Smith Corset Shops, Inc.,* 696 F.2d 971, 976 (1st Cir. 1982); *In re Smith,* 876 F.2d 524, 526 (6th Cir.1989); *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *In re Advent Corp.,* 24 B.R. 612, 614 (B.A.P. 1st Cir.1982); *In re Colon,* 102 B.R. 421 (Bankr.E.D.Pa.1989), **unless countenanced by the court in which the chapter 11 petition is pending,** *see generally* 2 *Collier on Bankruptcy,* [para.] 362.11 (15th ed. 1987) ("actions taken in violation of the stay are void and without effect").

*Interstate Commerce Commission v. Holmes Transportation, supra,* 931 F.2d at 988 (emphasis supplied).[7]

Obviously, the words "unless countenanced by the bankruptcy court" are of interest. They would seem to indicate that acts taken in violation of the stay are voidable rather than void, because if void, a bankruptcy court would not have the power to "countenance" violations of the stay. The paragraph seems to imply that the bankruptcy court has the power to "countenance" violations of the stay.

■ Although the matter is not free from doubt, based on the foregoing discussion, I am of the opinion that the First

---

6. Emphasis supplied.

7. The case of *In re Smith* dealt with the repossession of an automobile and *In re 48th Street Steakhouse, Inc.* concerned the sending of a notice of termination of a lease, both actions taking place during the period of the automatic

stay; *In re Colon* concerned an attempt to collect traffic fines and suspend drivers' licenses during the period within which the automatic stay was in effect. None of the cases discussed the power to annul or retroactive validation.

Circuit, if faced with the question, would follow the Fifth Circuit precedent in *Sikes v. Global Marine, Inc., supra,* and *Picco v. Global Marine Drilling Co., supra,* and the Eleventh Circuit precedent in *In re Albany Partners, Ltd., supra,* and hold that the power to annul the stay includes the power to annul the stay retroactively so as to validate an action taken in violation of the stay. In my view, the fact that the bankruptcy court has to exercise the power, and has the power to refuse to annul the stay, is sufficient safeguard of the protections which the automatic stay is designed to give to debtors.

This point is made in the Third Circuit's decision in *Association of St. Croix Condominium Owners, supra,* which was cited by Judge Kenner in her opinion in *In re Roxse Homes, Inc., supra.* In the case, the Third Circuit was faced with the situation where one of the parties to a case had filed a Chapter 11 petition after judgment had been entered in the district court but before the Third Circuit could act on the appeal from the judgment. The Court held that the automatic stay was applicable and that the appeals were therefore stayed. The Court retained jurisdiction and permitted the parties to seek relief from the stay in the bankruptcy court. *Association of St. Croix Condominium Owners, supra,* 682 F.2d at 449. The Court wrote:

> Under the new Code, relief from a stay must be authorized by the Bankruptcy Court to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor. **Because it is the bankruptcy judge who is the most knowledgeable about the debtor's affairs, and about the effect that any judicial proceeding would have on the debtor's reorganization, it is essential that [the bankruptcy judge] make the determination as to whether an action against the debtor may proceed or whether the stay against such actions should remain in effect.**

*Id.* at 448 (emphasis supplied).

■ However, in order to fully safeguard the policy behind the automatic stay, it is my opinion that any exercise by the bankruptcy court of its power to annul and thereby validate acts taken in violation the stay must be explicit. Put another way, I do not believe a lifting of the stay to allow prosecution of a claim is sufficient to annul the stay retroactively so as to validate what has previously occurred with respect to a particular claim.

This is the point which is made by the dissent by Judge Johnson in *Sikes v. Global Marine, Inc., supra,* 881 F.2d at 180–81. Although, he agreed with the majority that based on the statutory power to annul the stay, "... a bankruptcy court may validate an otherwise void filing in violation of the automatic stay ...", he was not persuaded that the bankruptcy judge in the *Sikes* case intended to do so. *Id.* at 180. An examination of the facts of the *Sikes* case is in order.

Sikes filed a personal injury suit against Global on March 6, 1986. Sikes did not know that Global had filed a Chapter 11 petition on January 27, 1986. Sikes sought relief from the stay in the bankruptcy court. After several months, Global agreed to a "modification" of the stay. *Id.* at 177. On February 13, 1987, the bankruptcy court issued an order lifting the stay "for the limited purpose of allowing certain actions to be commenced against Global and allowing discovery to proceed in those actions." *Id.* Global moved to dismiss the case as having been violative of the automatic stay. Sikes filed a second action and requested consolidation; Global opposed consolidation on the ground that the statute of limitations had run. *Id.* at 178. On September 25, 1987, the bankruptcy court issued a further order "modifying" the automatic stay:

> ... for the limited purpose of allowing [certain] personal injury actions ... [including Sikes'] to be commenced against Global, permitting personal injury actions that are pending against Global to

proceed, allowing discovery to proceed in those actions, and allowing trials to proceed.

*Sikes v. Global Marine, Inc., supra,* 881 F.2d at 178.

The district court held that regardless of the bankruptcy court's order, the complaint filed in violation of the stay had not been validated. Hence, the complaint was dismissed; Sikes appealed.

The majority·found that the bankruptcy court's orders had validated the filings which had occurred in violation of the stay; heavy reliance was placed on the language which allowed pending actions to proceed. Judge Johnson was of the view that the September 25th order only permitted pending actions which had been filed after the February 18th order to proceed, *Id.* at 180, and that any inference that the bankruptcy judge intended to permit actions filed before February 18th to proceed "contravenes a fundamental purpose of the automatic stay in bankruptcy—the purpose being to provide the debtor with relief from his creditors and their collection efforts." *Id.* at 180–81.

■ It is to be recalled that unlike the situation in *Sikes,* the Order of Bankruptcy Court in New Jersey lifting the stay in order for the Shulzes to prosecute their claim did not make any mention of previously-filed claims. *See* pp. 252–253, *supra.* Rather, the Order of March 6, 1992 "granted [the Shulzes] relief from the automatic stay to prosecute an action for personal injuries against the debtors." I find the omission of any language permitting the Shulzes' **pending** action to proceed to be fatal to the Shulzes' position that the stay was annulled thereby validating the complaint and amended complaint which were filed in violation of the stay. Using the First Circuit's words in the case of *Interstate Commerce Commission v. Holmes Transportation, Inc., supra,* the March 6th Order of the Bankruptcy Court in New Jersey did not "countenance" the filing

made in violation of the automatic stay. As I said before, I believe any such "countenancing" must be explicit in order to safeguard the protections of the automatic stay.

Accordingly, it is ORDERED that Defendant Holmes Transportation, Inc.'s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) and (6) (# 18) be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that the claims against the defendant, Holmes Transportation, Inc., contained in the Complaint, Etc. (# 1) and the Amended Complaint, Etc. (# 2), be, and the same hereby are, DISMISSED without prejudice to the plaintiffs filing a further amended complaint which includes their claims against Holmes Transportation, Inc., pursuant to the permission granted by the Bankruptcy Court in New Jersey by its March 6th order.[8]

### OTHER MOTIONS RE: HOLMES TRANSPORTATION, INC.

From the ruling·on the motion to dismiss the claims against Holmes Transportation, Inc., action on other pending motions follow. Accordingly, it is ORDERED that Defendant, Holmes Transportation, Inc.'s. Motion to Strike Plaintiffs' Application for Default (# 17) be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that Plaintiffs' Request for Default Pursuant to Federal Rules of Civil procedure 55(a) (# 8) be, and the same hereby is, DENIED.

### MOLNAR'S MOTION TO SET ASIDE DEFAULT

■ Without going into an extended discussion, it appears that, since Molnar was an agent of Holmes at the time of the accident and within the scope of his employment, the plaintiffs seek to impose liability on Molnar so that they can recover from the proceeds of Holmes' insurance policies with Liberty. It does not appear that Molnar has any assets to pay a judg-

---

**8.** Because of the uncertainty of the issue, if the plaintiffs would rather appeal this ruling to the First Circuit than file a further amended complaint, I shall, upon a motion requesting the same, consider entering a separate judgment pursuant to Rule 54(b), Fed.R.Civ.P., to permit such an appeal.

ment or that plaintiffs seek recovery from Molnar from any source other than Holmes' insurance. In these circumstances, in the exercise of my discretion, I shall set aside the default. Accordingly, it is ORDERED that the Motion of the Defendant, John Molnar, Sr., to Set Aside Default Pursuant to F.R.C.P. 55(a) and for Leave to file Answer Late Pursuant to F.R.C.P. 12(a)(# 16) be, and the same hereby is, ALLOWED and that Plaintiffs' Request for Default Judgment Pursuant to Federal Rules of Civil Procedure 55(b)(1)(# 9) be, and the same hereby is, DENIED.