Tina A. GRAZIANI, Appellee,

v.

Eric L. RANDOLPH and Burlington
Motor Carriers, Inc., Appellants.

Superior Court of Pennsylvania.

Argued March 16, 2005.
Filed Nov. 9, 2005.

Susan T. Roberts, Washington, for Randolph, appellant.

Keith R. McMillen, Aliquippa, for appellee.

BEFORE: KLEIN, BENDER, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Eric L. Randolph and Burlington Motor Carriers, Inc., an Indiana Corporation (collectively, Burlington; individually, Randolph and BMC), appealed the trial court's order dismissing their Motion to Strike Complaint and Strike or Open Default Judgment, their Motion for Demand for Jury Trial, and their Petition for Recusal or Hearing on Recusal. Relying largely on the Agreed Order Modifying the Automatic Stay between the parties approved by the United States Bankruptcy Court for the Southern District of Indiana ("Bankruptcy Court"), we found no merit in Burlington's appeal and thus affirmed the trial court's decision. This case is now before us on remand from our Supreme Court with instructions to reconsider our earlier decision in light of the Bankruptcy Court's March 28, 2005 "Clarification Order of the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division" ("2005 Clarification Order").

¶ 2 For the sake of clarity, we restate the following relevant facts. On November 25, 2000, a commercial tractor-trailer owned by BMC and driven by Randolph allegedly struck Graziani's car in Beaver County, Pennsylvania, causing Graziani severe and permanent injuries. On July 9, 2001, BMC filed a Bankruptcy Petition under Chapter 11 in United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division. Graziani received no notice of BMC's bankruptcy filing.

¶ 3 On March 22, 2002, having no knowledge of BMC's bankruptcy petition, Graziani filed a complaint in the Court of Common Pleas of Beaver County, seeking relief against both BMC and Randolph. BMC and Randolph were served with copies of the complaint. On June 18, 2002, after Randolph and BMC failed to appear or otherwise acknowledge Graziani's complaint, Graziani was awarded default judgments against both parties.

¶ 4 On November 1, 2002, Graziani moved the trial court to schedule a non-jury trial to liquidate the default judgments entered in June 2002. That motion was denied, however, when counsel entered an appearance for both BMC and Randolph and produced a stay order issued by the Bankruptcy Court in connection with BMC's bankruptcy petition.

¶ 5 On January 23, 2003, Graziani secured the Agreed Order from the bankruptcy court modifying the automatic stay effective in connection with BMC's bankruptcy petition. Due to its importance to this litigation, we include below all material portions of that order.

### AGREED ORDER MODIFYING AUTOMATIC STAY

Robert S. Koor, Trustee herein (the "Trustee"), and Tina A. Graziani, ("Plaintiff") herewith agree that the automatic stay in this bankruptcy case arising pursuant to Section 362 of the Bankruptcy Code be modified as specified below, ask the Court to enter this Agreed Order, and in support thereof state as follows:

1. The above-captioned Debtors filed their voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code on July 9, 2001 (the "Petition Date"), and operated their businesses as Debtors–in–Possession until subsequent conversion of their cases.

2. Each of the Debtors' cases was converted to a case under Chapter 7 of the Bankruptcy Code by Order of this Court on May 17, 2002.

\* \* \* \*

5. Plaintiff is an individual who has filed a currently pending suit against one or more of the Debtors in The Court of Common Pleas of Beaver County, Pennsylvania under Case No. 10501 of 2002 (the "Pending Action").

6. The Plaintiff's claim in the Pending Action arises from events occurring prior to the Petition Date.

7. The Plaintiff wishes to continue litigation of the Pending Action.

8. The Trustee intends to exercise his discretion pursuant to F.R.P.B. 6009 not to appear or defend in the Pending Action.

9. The Trustee has no objection to the continued litigation of the Pending Action except to the extent that such continued litigation creates a financial burden upon the bankruptcy estates.

10. The Trustee and the Plaintiff hereby agree:

a. that the automatic stay in these cases arising pursuant to Section 362 of the Bankruptcy Code should be modified to permit continued litigation of the Pending Action against the Debtors;

b. that the Plaintiff shall bear all costs and expenses of any discovery demands and of any other demands or requests addressed to the Trustee or the bankruptcy estates; and

c. that the Plaintiff shall pay all such costs and expenses in advance of their incurrence by the bankruptcy estates.

d. That, unless further ordered by this Court, the Plaintiff may enforce any judgment or settlement obtained in the Pending Action or otherwise only, but without further order of court, to the extent of either (a) the Debtors' insurance coverage (including any deposits or bonds securing deductibles) or (b) assets of non-debtors.

Agreed Order Modifying Automatic Stay (hereinafter, "Agreed Order"), filed January 16, 2003, at 1–3. The Honorable Anthony J. Metz, United States Bankruptcy Court, approved the Agreed Order on January 23, 2003.

¶ 6 On February 19, 2003, Graziani again moved the trial court to schedule a non-jury trial to liquidate damages, this time affixing to her motion a copy of the Agreed Order. Burlington did not oppose the motion. The trial court granted Graziani's request, scheduling the requested non-jury trial for May 5, 2003.

¶ 7 On May 1, 2003, Burlington filed a number of motions, including a Motion for Demand for Jury Trial, a Motion for Reconsideration, a Motion to Strike Complaint and to Strike and/or Open Default Judgments (hereinafter, "Motion to Strike

or Open"), and a Petition for Recusal or Alternatively for Hearing on Recusal. By Opinion dated May 19, 2003, the trial court responded to Burlington's petition and motions, granting in part Burlington's Motion for Reconsideration, but denying the balance of Burlington's motions and its petition concerning recusal. The trial court also found, where the language adopted by the bankruptcy court clearly identifies specific pending litigation, and uses language indicating an intent that the referenced litigation should proceed as originally filed, that Graziani need not file any new documents, but rather may stand on his or her previously filed complaint. Trial Court Opinion (T.C.O.), 5/19/03, at 5–8, 9.

¶ 8 Burlington appealed the trial court's ruling, arguing that the trial court erred in declining to strike Graziani's complaint and consequently in declining to strike or open the default judgments that were entered when Burlington failed to respond to that complaint. Burlington argued that the filing of Graziani's complaint violated the automatic stay provision of 11 U.S.C. § 362(a), that this violation rendered the complaint void *ab initio,* and that the trial court improperly construed the Bankruptcy Court's Agreed Order to apply retroactively, thus curing the putative violation of § 362(a). After a comprehensive review of relevant law, we declined the invitation to address the controversial question whether a complaint is void *ab initio* versus merely voidable, because a bankruptcy court has discretion to effectuate, for example, an agreed order permitting pending litigation to proceed notwithstanding § 362(a), where circumstances support that decision. *See, e.g., E. Refractories Co. Inc. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir.1998); *Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178–79 (5th Cir.1989).

¶ 9 With this analysis in hand, we next considered the adequacy of the Agreed

Order in this case to provide retroactive relief to Graziani, thus preserving her complaint and the default judgment that followed. After a review of the Order, we found that the Agreed Order in this case was clear as to the Bankruptcy's Court's intent. We also found that the Agreed Order validated Graziani's complaint and did not require that she file a new complaint to maintain her personal injury claim. Further, we found the Agreed Order identified Graziani as one "who has filed a currently pending suit against one or more of the Debtors in The Court of Common Pleas of Beaver County, Pennsylvania under Case No. 10501 of 2002," and defined that suit as the "Pending Action." Moreover, the Bankruptcy Court noted that Graziani's claim in the Pending Action arises from events occurring prior to the Petition Date.

¶ 10 We considered whether, given the validity of the initial complaint, the trial court acted properly in denying Burlington's Motions to Strike or Open the default judgment entered on that complaint. We relied upon the fact that there is substantial agreement among federal courts that a bankruptcy court may afford retroactive relief from the automatic stay even as to litigation initiated after the filing of a bankruptcy petition. *See, e.g., In re Schwartz,* 954 F.2d 569, 572–73 (9th Cir. 1992). Therefore, we affirmed the trial court's decision.

¶ 11 Burlington then filed a petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied. While that petition for appeal was pending, Burlington's insurance company, OneBeacon Insurance Company ("OneBeacon") filed a Motion for Emergency Order of Clarification of January 16, 2003 Agreed Order. The Bankruptcy Court, acting *sua sponte,* entered a Clarifying Order on March 28, 2005 ("2005 Clarification Order"). The rel-

evant portions of the Order are set forth below.

Given certain motions that have been filed in this Court, it has come to the attention of this Court that its approval of the Agreed Order has been used by the State Trial Court and the Superior Court of Pennsylvania (collectively, the "Pennsylvania State Courts") to give retroactive effect to not only the Graziani's filing of the State Court complaint but also to the default judgment entered against BMC on June 18, 2002. Based on the ambiguity that apparently exists in this Court's January 16th Order, the Court sua sponte under § 105(a) of the Bankruptcy Code, hereby CLARIFIES that January 16th Order, approved January 23rd, for the reasons set forth below.

\* \* \*

Thus this Court CLARIFIES its prior order of January 16, 2003 and finds that this Court's Order modifying the stay should be treated as retroactive only to the extent that Graziani need not re-file her complaint. However, this Court's Order Modifying the Automatic Stay should not be treated as retroactive between the date of the filing of Graziani's complaint and the date of this Court's Agreed Order Modifying the Automatic Stay. Thus, the Agreed Order Modifying the Automatic Stay is not retroactive with respect to any other acts taken in the Pending Action, including the filing of the motion for default judgment and the entry of the default judgment, thus rendering such acts VOID.

2005 Clarification Order at 4, 7 (footnotes omitted) (emphasis in original).

¶ 12 After the Bankruptcy Court issued the 2005 Clarification Order, Burlington filed an Application for Reconsideration of Denial of Allowance of Appeal. The Penn-

1248

sylvania Supreme Court granted the Application for Reconsideration and ultimately remanded the matter to this Court, "for reconsideration in light of the Order dated March 28, 2005, entitled 'Clarification Order of the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division.'" Order, 6/8/2005.

¶ 13 Pursuant to our Supreme Court's Order, we will reconsider our decision in light of the Bankruptcy Court's March 28, 2005 Order. On remand, our review is limited to only those issues designated by our Supreme Court. *See Basile v. H & R Block Inc.*, 777 A.2d 95, 100 (Pa.Super.2001); *see also Scott v. Pennsylvania Board of Probation and Parole*, 739 A.2d 1142, 1145 (Pa.Cmwlth.1999) ("The law is clear that we may only address what was remanded to us.").

¶ 14 Preliminarily, we note that Graziani set forth a number of arguments regarding the propriety of the Bankruptcy Court's action in issuing the 2005 Clarification Order. In her brief on remand, Graziani claims that OneBeacon's effort to seek a clarification of the 2003 Agreed Order constitutes an unlawful collateral attack on a valid Pennsylvania state judgment. Brief for Appellee on Remand at 5. She also argues that OneBeacon lacked standing to seek relief from the 2003 Agreed Order and that the Bankruptcy Court lacked jurisdiction to enter the 2005 Clarification Order. *See id.* at 9–10. We will briefly address these issues.

¶ 15 We acknowledge that the bankruptcy court has jurisdiction to determine the extent and terms of the automatic stay under 11 U.S.C. § 362. *See Diaz v. State of Texas (In re Gandy)*, 327 B.R. 796, 801 (Bankr.S.D.Tex.2005) (noting that "state courts lack authority to terminate the stay when it in fact does apply. The bankruptcy court alone has authority to modify the automatic stay."); *Mirzai v. Kolbe Foods,*

*Inc.*, 271 B.R. 647, 654 (C.D.Cal.2001) ("The longstanding rule is that a state court judgment entered in a case which falls within the federal courts' exclusive jurisdiction is subject to collateral attack in federal courts") (citation and quotations omitted); *In re Raboin*, 135 B.R. 682, 684 (Bankr.D.Kan.1991) ("[a bankruptcy court] has exclusive jurisdiction to determine the extent and effect of the stay, and the state court's ruling to the contrary does not bar the debtor's present motion."). We find that it is well-established that a bankruptcy court has the right to modify or clarify its orders relating to the scope of a stay.

¶ 16 Graziani's arguments regarding OneBeacon's standing to bring the motion requesting clarification as well as its argument that the Bankruptcy Court lacked jurisdiction to enter the Order are arguments that Graziani made before the Bankruptcy Court. The Bankruptcy Court did not find these arguments persuasive. We will not decide whether the Bankruptcy Court erred when it issued the 2005 Clarification Order. We further assume that Graziani made these arguments in her appeal of the Bankruptcy Court's decision to issue the 2005 Clarification Order, which is the proper forum to challenge the propriety of that Order.

¶ 17 We further note that the Bankruptcy Court specifically stated that it was acting *sua sponte* when it issued the 2005 Clarification Order. *See* 2005 Clarification Order at 4. As such, the argument relating to OneBeacon's standing to move for clarification is irrelevant, as the Bankruptcy Court acted of its own accord. Further, to the extent that Graziani is arguing that OneBeacon's motion constitutes an improper collateral attack, we find that argument irrelevant because the Bankruptcy Court did not grant OneBeacon's motion, but rather acted *sua sponte*.

¶ 18 Regarding the substance of the 2005 Clarification Order, Graziani argues that the Order is contrary to the applicable law and contrary to the 2003 Order. Brief for Appellee on Remand at 5–6. She also argues that the default judgment against Randolph is not affected by the 2005 Clarification Order. Brief for Appellee on Remand at 8.

¶ 19 As with the arguments regarding standing and jurisdiction, the propriety of the Order is not something this Court will consider, as it is well established that a bankruptcy court has the power to modify a stay. *See e.g., Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir.1998) ("[B]ankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief"). Indeed, as Graziani recognized in her brief filed with this Court in 2004,

> Because it is the bankruptcy judge who is the most knowledgeable about the debtor's affairs, and about the effect that any judicial proceeding would have on the debtor's reorganization, it is essential that the [bankruptcy judge] make the determination as to whether an action against the debtor may proceed or whether the stay against such actions should remain in effect.' *Schulz v. Holmes Transportation, Inc.* 149 B.R. 251 (D.Mass.1993); *citing, Association of St. Croix Condominium Owners[ v. St. Croix Hotel Corp.],* 682 F.2d 446 (3rd Circuit.1982) [*sic*]. The fact that the bankruptcy court has the power to grant or refuse a relief from a stay is considered a "sufficient safeguard of the protections which the automatic stay is designed to give creditors." *Schulz, supra.*

Brief for Appellee at 4–5.

¶ 20 We find, therefore, that the Bankruptcy Court's 2005 Clarification Order is valid and we will now interpret and apply that order.

¶ 21 The only issue Graziani raises that relates to our application of the 2005 Clarification Order is whether the default judgment entered against Randolph, the individual that was driving the BMC vehicle that was involved in the accident with Graziani, is affected by the Order. In her brief on remand, Graziani argues that the 2005 Clarification Order does not mention Randolph and that he receives no benefit from the stay provisions of the Bankruptcy Code. Brief for Appellee on Remand at 8. She further argues that there are no financial consequences to the debtor, "therefore the purpose behind the automatic stay provisions are not served or furthered in any respect by expanding stay protection to include Randolph." Brief for Appellee on Remand at 8 Finally, she argues that even if she were to succeed in her claim against Randolph, pursuant to the terms of the 2003 Agreed Order, Burlington could not be affected by the claim because the 2003 Agreed Order expressly limits her recovery to insurance coverage funds and/or non-debtor assets. Brief for Appellee on Remand at 10.

¶ 22 In response, Burlington argues that the interests of Randolph and BMC are so intertwined that BMC is the real party in interest and the stay should remain. Appellants Reply to Appellee's Brief on Remand at 5. Specifically, Burlington argues that because Randolph was acting within the scope of his duty as an employee for BMC, and because "it is well established that the actions of an agent of a corporation are imputed to the corporation when the agent's conduct was in the course of his employment and for the benefit of the corporation," a judgment against Randolph would be imputed to BMC. Appellants Reply to Appellee's Brief on Remand at 5–7. Burlington further argues that under the

doctrine of *respondeat superior,* any liability imposed on Randolph will be imputed to BMC and, therefore, potentially diminish the bankruptcy estate. Appellants Reply to Appellee's Brief on Remand at 7.

¶ 23 It is well established that the automatic stay under the Bankruptcy Code applies to debtors. 11 U.S.C. § 362(a)(1) states that,

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title...

It is less clear, however, when a court may extend the stay to also encompass actions brought against non-debtors. A number of courts have found that a stay may be extended to non-debtors under "unusual circumstances." *See e.g., A.H. Robins v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986) (concluding that stay should be extended where "there is such identity between the debtor and the third-party defendant that debtor may be said to be the real party defendant and a judgment against the third-party defendant will in effect be a judgment or finding against the debtor"); *see also, McCartney v. Integra National Bank North,* 106 F.3d 506, 510 (3d Cir. 1997) (same). Stated differently, the issue is whether the debtor's interests will be protected, and the "pivotal question is whether the debtor will suffer irreparable harm if the proceedings against the non-debtor go forward." *State of Oklahoma v. Medical Management Group, Inc., (In re Medical Management Group, Inc.)* 302 B.R. 112, 2003 WL 21487310, at *6 (B.A.P. 10th Cir.2003) (table) (analyzing and extending the stay to nondebtor parties under § 105 of the Bankruptcy Code).

¶ 24 At least one court has addressed this issue in a similar context. In *Turman v. Ameritruck Refrigerated Transport, Inc.,* No. 99–2325–JWL, 2001 WL 135843, 45 Collier Bankr.Cas.2d 964 (D.Kan. Feb.6, 2001), the court looked at whether the bankruptcy court had jurisdiction to enter a stay which prohibited prosecution of a non-debtor employee involved in a truck accident which occurred while the employee was driving a truck for Ameritruck, the debtor corporation. *Turman,* 2001 WL 135843, at *1. In finding that a stay was proper, the court found,

> In this case there is no dispute that Ameritruck is liable for the actions of [the non-debtor employee] taken in the course of his employment under the doctrine of respondeat superior. Thus, the bankruptcy court was confronted with an 'unusual situation' in which a judgment against [the non-debtor employee] would, for all practical purposes, be a judgment against Ameritruck, the debtor.

*Turman,* 2001 WL 135843, at *2.

¶ 25 We find the analysis in *Turman* is applicable here, although not controlling. Graziani has not alleged that Randolph was acting outside the scope of his employment with BMC. As with *Turman,* any liability imposed upon Randolph would likely be imputed to BMC under the doctrine of respondeat superior and such a finding would impact the assets of the debtor's estate and at the very least would constitute a finding of liability on the part of BMC.

¶ 26 As Graziani noted, and Burlington concedes, neither of the Bankruptcy Court's Orders discusses whether the stay applies to Randolph. However, we do not find this to be dispositive of whether we should find the stay applicable to Randolph. Based upon the language in the 2005 Clarification Order, it is clear that the Bankruptcy Court is concerned with preserving BMC's due process rights. *See* 2005 Clarification Order at 6 ("Using this Court's approval to validate the entry of default judgment where BMC was under no legal obligation to respond due to the fact that a stay was in effect with respect to all litigation only serves to deny BMC due process of law in being allowed to defend itself in the Pending Action.") To allow Graziani to proceed against Randolph, when any judgment against him would likely be imputed to BMC, and at the very least would be binding on BMC, would also constitute an impermissible violation of BMC's right to due process. Therefore, we find that the 2005 Clarification Order requires a finding that the trial court erred when it refused to strike the default judgment against Randolph as well as BMC.

¶ 27 After a careful review of the 2005 Clarification Order, we find that the default judgment entered against Burlington should be stricken. The trial court erred when it denied Burlington's motion to strike the default judgment.

¶ 28 Order of May 19, 2003, **VACATED**. Default Judgment of June 18, 2002 **STRICKEN**.

¶ 29 KLEIN, J., files a Concurring Opinion.

CONCURRING OPINION BY KLEIN, J.:

¶ 1 Because I believe that certain issues raised in the prior incarnation of this appeal remain unclear and because such issues may arise in other actions, I write separately. The issues are the confusion over whether certain actions taken during the bankruptcy are void or voidable and the need for specific proof of intent to ratify those actions.

**Actions taken against a debtor during the pendency of bankruptcy are void.**

¶ 2 Many courts, including our own, are uncertain as to whether actions taken against a debtor during the pendency of a bankruptcy are void or voidable. This confusion is, in no small part, self-imposed due to the non-traditional use of those terms.

¶ 3 The clarification order supplied by the U.S. Bankruptcy Court clearly states such actions are void. "The Pennsylvania State Courts have given legal effect to the otherwise void (and not voidable) acts of the filing of a complaint and obtaining a default judgment during the pendency of the bankruptcy without first obtaining relief from the automatic stay." Clarification Order, 6/29/05 at 6.

¶ 4 This statement is not simply a case specific pronouncement from the bankruptcy judge in this matter. It is a requirement of the Bankruptcy Code at 11 U.S.C.A. § 362 and has been affirmed by the Third Circuit Court of Appeals in *Raymark Industries v. Lai,* 973 F.2d 1125 (3d Cir.1992). Thus the starting point for any analysis regarding relief from an automatic stay is that the actions taken during the pendency of the bankruptcy, without prior permission, are void.

¶ 5 The confusion ensues because of the standard uses of the terms void and voidable. An action that is void is often viewed as an action that cannot be saved. The action is viewed as a nullity, as if it never happened. That is clearly not the case here. While the Bankruptcy Code declares certain actions as void, it also allows

such actions to be ratified by the consent of the parties involved. *See* 11 U.S.C.A. § 362(d). The strict and traditional definition of void is inapplicable because the "void" action in this circumstance can be saved by ratification. *See generally In re: Schwartz v. United States,* 954 F.2d 569 (9th Cir.1992); *Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir.1989).

¶ 6 In lieu of the term "void," the courts have, in some instances, taken to calling such actions "voidable." This term, however, is also imprecise. A voidable action is, generally, seen to be an action that is otherwise valid, but upon a showing of certain proof, may be declared invalid. An example of this would be a contract with a minor. Although a minor is generally deemed incompetent to enter into a contract, such a contract is nonetheless enforceable unless the minor invalidates it. *See generally Pankas v. Bell,* 413 Pa. 494, 198 A.2d 312 (1964). The starting point of analysis in that instance is the contract is valid and proof must be shown to negate that presumption.

¶ 7 As noted above, the Bankruptcy Code makes it clear that actions taken during pendency of the bankruptcy are invalid. The term "voidable" as generally understood is also not quite correct. Thus we seem to be in a definitional haze, with neither term being precisely accurate. By our own choice of terms, "void" and "voidable," we have engendered confusion.

¶ 8 We would be wise, or at least more prudent, to simply begin our analysis in matters such as this with the recognition that actions taken during the pendency of bankruptcy, without prior relief from the automatic stay, are invalid.

**Specific proof of intent to ratify should be required.**

¶ 9 Because actions taken during the pendency of bankruptcy are invalid, specific proof of intent to ratify an action should be required in all actions. Such proof is already required to ratify the filing of a complaint. *See Sikes, supra.* Specific proof should be required to ratify all actions.

¶ 10 In my original dissenting opinion in this matter, I voiced concern that no proof had ever been presented to our Court as to whether the Bankruptcy Court knew a default judgment had been taken when it issued its original order to modify the automatic stay. Absent that proof, we risked violating the due process rights of the debtor by denying the debtor the ability to defend itself against allegations of negligence. My concerns were validated when the Bankruptcy Court issued its clarification. "When Graziani did obtain such relief by agreement with the Trustee, the Agreed Order failed to recite that a default judgment had been taken against BMC; nor was this Court informed that a default judgment had been taken against BMC." Clarification Order at 5.

¶ 11 My concerns on this point were buttressed by the notion a defendant in bankruptcy is not allowed to formally answer a complaint. This idea was taken from the Bankruptcy Code itself, 11 U.S.C.A. § 362, and the very definition of a stay, which is: a halt to a proceeding, or in specifically referencing the automatic stay of bankruptcy, a bar to all judicial and extrajudicial collection efforts. This proposition was also supported by the clarification order. "Graziani, unaware of the automatic stay, filed her complaint and obtained her default judgment before obtaining relief from the stay in this Court, despite the fact that BMC was stayed from even responding to the complaint or that BMC's filing of a response could have been seen as a waiver of the stay. *See, Matter of the United States Abatement Corp.,* 152 B.R. 78 (Bankr.E.D.La.1993)." Clarification Order at 5.

¶ 12 That there are great differences between the filing of a complaint and the taking of a default judgment is obvious. There are dangers in presuming the ratification of a complaint ratifies any and every action taken after the complaint. All reported case law involves merely the ratification of the filing of a complaint. Once again, the clarification order is in accord: "Although this Court is aware of the cases where the automatic stay has been modified or annulled retroactively, neither the Pennsylvania State Court decisions nor Graziani point to any case where a *default judgment* taken in violation of the stay was later given retroactive effect." *Id.* at 6.

¶ 13 Although I can find no case law that has given retroactive effect to a default judgment, I can imagine a circumstance where it might. Where a defendant is in a position to admit full liability for an accident and where the insurance carrier has been fully apprised of the facts and agrees that no defense to fault can be credibly mounted, leaving damages as the only point in contention, parties might well agree to accept and ratify a default judgment. However, such a circumstance cannot be presumed. Rather, the parties should need to make specific reference to these facts when seeking relief from the automatic stay. If such a factual scenario is clearly laid out in the order granting relief from the automatic stay, then a trial court might be comfortable in allowing the case to proceed directly to a trial on damages.

¶ 14 But again I emphasize, specific proof of such a circumstance needs to be present before we can presume to ratify a default judgment. Otherwise, we are denying a party the right to mount a defense and violating that party's right to due process. We must be cognizant of the fact that while the automatic stay is in place and no relief from the stay has been granted, the debtor is not allowed to respond to the legal action taken against it.[1] Just as there must be specific proof of intent to ratify the filing of a complaint, there should also be a requirement of specific proof to ratify any other action taken in violation of the automatic stay.

¶ 15 Another problem that may arise if ratification of a default judgment is granted without specific proof is the possibility of the affected insurance carrier disclaiming coverage. In virtually every circumstance where relief for the automatic stay is granted, the relief is contingent upon insurance coverage. That is, the claimant may proceed with the tort claim but agrees to limit any recovery to the maximum amount of applicable insurance coverage. In this way the claimant still has an avenue of redress for the alleged tort and the assets of the debtor are protected from the claim and remain available to pay other debtors.

¶ 16 If a default judgment is ratified without the consent and/or knowledge of the insurance carrier then the carrier may have the right to disclaim coverage on the basis that the insured improperly limited the carrier's ability to defend the action. "By virtue of a cooperation clause, an insured binds itself to assist the insurer fully in its handling of the claim and agrees to take no action which would vitiate a valid defense." *Forest City Grant Liberty Assoc. v. Genro II, Inc.*, 438 Pa.Super. 553, 652 A.2d 948, 951 (1995) If the carrier

---

1. As noted by the majority in this Court's prior opinion, the automatic stay did not prevent the debtor from showing the simple courtesy to both Graziani and the trial court of sending a suggestion of bankruptcy along with a letter informing the court and the plaintiff of the automatic stay and the requirement to seek relief from that stay. However, this courtesy is not a requirement of the law.

disclaims coverage, then the only assets available to pay the tort claim are those of the debtor. This would bring the tort action back under the authority of the bankruptcy court and stay the action. Not only would the action be stayed, preventing a timely resolution, but it would greatly increase the probability that the claimant would be inadequately compensated for any injury caused by the defendant/debtor's negligence. This cannot be a resolution favored by any court.

¶ 17 Thus, in addition to the due process concerns for the debtor, a requirement of specific proof of intent to ratify also protects the claimant/plaintiff. This appears to be a solution that benefits all parties concerned.

¶ 18 Putting these concerns together, I believe the following procedure should govern cases such as this. The beginning point for any analysis is that any action taken against a debtor during the pendency of a bankruptcy and that has been taken without formal relief from the protection of the automatic stay is invalid (void). Such invalid actions may be ratified, but only to the extent that specific proof of intent to ratify each action is supplied to the bankruptcy court and documented by the order granting relief from the automatic stay. In this way, all parties' rights will be properly protected.